Harold T. CRUM, Robert Munkatchy, Garry V. Wilburn, James C. Bond, and Daina Craig Wilburn, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 14–93–00387–CR, 14–93–00388–CR, 14–93–00588–CR, 14–93–00718–CR, 14–93–00729–CR and 14–94–00818–CR.

Court of Appeals of Texas, Houston, (14th Dist.).

Jan. 16, 1997.

Opinion Overruling Point of Error on Rehearing April 24, 1997.

Michael Maness, Jack T. Cole, Houston, for appellants in No. 14–93–00387–CR.

Michael Maness, Houston, for appellants in No. 14–93–00388–CR.

Michael Maness, Jerome Godinich, Houston, for appellants in No. 14–93–00588–CR.

Michael Maness, James M. Sims, Houston, for appellants in No. 14–93–00718–CR.

Michael Maness, Michael B. Charlton, Keith Hampton, Houston, for appellants in No. 14–93–00729–CR.

Michael B. Charlton, Van E. McFarland, Houston, for appellants in No. 14–94–00818–CR.

William J. Delmore, III, Houston, for appellee.

Before LEE, YATES and O'NEILL, JJ.

## MAJORITY OPINION

YATES, Justice.

Appellants were individually charged with the offense of engaging in organized crime. TEX. PENAL CODE ANN. § 71.02.[1] Appellants entered pleas of not guilty and were tried in a joint trial before a jury. The jury found each appellant guilty of engaging in organized crime as alleged in the indictments. The jury assessed punishment for Harold Crum, James Bond, and Daina Wilburn at ten years probation and a $10,000 fine. Robert Munkatchy's punishment was assessed at five years in prison and a $10,000 fine. Garry Wilburn was sentenced to ten years probation and a $10,000 fine for count one and five years in prison and a $10,000 fine for the second count. In fifteen points of error, appellants challenge (1) the sufficiency of the evidence to support their convictions; (2) the indictments; (3) the charge to the jury; (4) the trial court's denial of Munkatchy's and Daina Wilburn's motions for severance; and (5) the admission of hearsay statements made by Munkatchy against Daina Wilburn. We affirm.

## FACTUAL BACKGROUND

Appellants were employees or affiliates of ComTec Computer Services, an IBM remarketer. In the computer industry, a "re-marketer" is a retailer who can give a customer not only computer equipment, or hardware, but also a line of complementary services such as installation of the equipment, software necessary to achieve the customer's objectives, and training in the use of that software for the customer's employees.

IBM began a program of lease financing for both hardware and complementary services provided by remarketers. A subsidiary of IBM known as IBM Credit Corporation (ICC) provided the capital for the lease financing packages. When a customer applied for lease financing, the customer would submit a credit application to the remarketer that was then forwarded to ICC. After conducting a credit check and assessing the amount of perceived risk of default, ICC would inform the remarketer of the lease rate and the amount of the deposit needed to initiate the lease. Where the customer, usually a small business, was so new it had no credit history, ICC would typically require a deposit equivalent to three months lease payments. Once ICC approved the credit application, it would give the money needed to fund the lease to the remarketer. The remarketer was to use the funds provided by ICC to purchase the computer hardware and to provide the complementary services requested by the customer. The customer, or end-user, would then make lease payments to ICC.

The evidence shows that appellants, through ComTec, abused this value-added lease program in two ways. First, ComTec sold computers to under-capitalized businesses in need of money instead of computers. In other words, ComTec would help the businesses obtain lease financing from ICC by paying the deposit on the lease. ComTec, in turn, purchased computer hardware that the company did not need. ComTec then took the money obtained for the complementary services and "rebated" it to the customer. This scheme served the purpose of getting new customers for ComTec and giving new businesses a loan. If the business failed, ICC bore the loss.

---

1. The crimes for which appellants were convicted were committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). There-fore, all references to the penal code are to the code in effect at the time the crimes was committed.

The second way ComTec abused the value-added lease program was to create fictitious companies. In this scheme, ComTec purchased the computers, but did not install them. The money for complementary services was transferred to an account held in the name of the fictitious business customer. Eventually, the fictitious company defaulted on the lease payments, again leaving ICC with the loss. Paul Marshall, the manager of customer financial services at ICC, estimated the loss to ICC from these schemes at between twelve and fourteen million dollars.

Several events led to the discovery of the fraud. ICC first became concerned when it noticed that some of the deposit checks were not written by customers, but by ComTec. Next, at a meeting between Robert Munkatchy, President of ComTec and ICC representatives, Munkatchy proposed that ICC offer venture capital as part of its financing because most start-up companies need capital. An ICC representative informed Munkatchy that ICC did not provide monetary loans.

When the first ComTec customer defaulted, ICC attempted to recover the unused money designated for complementary services. ICC learned that ComTec had given the money directly to the customer in lieu of the complementary services. IBM auditors later learned that between twenty-three and thirty-five of ComTec's customers were fictitious. Paul Marshall testified that 85% of ComTec's customers defaulted on their lease payments.

### Specific instances of theft

Horace Sutterer, a small business loan administrator, testified that Munkatchy contacted him through an advertisement Sutterer had placed. Sutterer had certain clients that needed financing but could not meet the Small Business Administration (SBA) guidelines. Munkatchy told him that if the business had a telephone number and needed to purchase computer equipment, he could get the company up to $1.75 in cash per dollar of computer equipment ordered. Munkatchy

and Sutterer began to work together to obtain financing for the small businesses through ICC. Sutterer testified that most of the customers ended up with more computer equipment than they needed so they could get the cash. Munkatchy charged the highest price for the computers that IBM would allow. When a customer pointed out that he could get the computer cheaper, Munkatchy "always came back to the point of cash." Several small businesses that did not meet bank financing or SBA financing qualifications were approved by ICC. Sutterer testified that Daina Wilburn and James Bond were listed as the salespersons on several of the applications sent to ICC.

Charter Bank's records reveal that Garry Wilburn provided the escrow needed by a fictitious company named A-1 Equipment. James Bond was listed as the owner of A-1 Equipment. Garry Wilburn wrote a check on an McCorp account to cover the escrow for A-1 Equipment.[2] The total amount of the lease funded by ICC was $137,183. Of this amount, $53,912 was designated for hardware and $83,271 was designated for complementary services. After deducting the price of the equipment and all of the complementary services rendered by ComTec, Pamela Steinmetz, ComTec's bookkeeper, issued a check to A-1 Equipment for $77,150. That check was endorsed by James Bond. Ms. Steinmetz testified that the records show that the equipment was left at the front desk to be picked up by James Bond. Steinmetz did not know if the equipment was ever installed.

Ms. Steinmetz further testified that she frequently advanced escrow money to customers at Munkatchy's and Daina Wilburn's direction. She stated that Munkatchy told her to deduct the escrow money from the complementary services money received from ICC.

Harold Crum participated in a fraudulent lease to H.T.C. Company. In June, 1990, ComTec provided escrow money to H.T.C. Company. On July 2, 1990, H.T.C. Company

**2.** Garry Wilburn opened the McCorp checking account on June 29, 1990 with a deposit provided by C.L. Cook from funds in the account of So-Tex, Inc., Munkatchy's company. The McCorp account appears to have been used for escrow checks after IBM asked ComTec to stop writing escrow checks.

wrote an escrow check to ICC for $16,989. The H.T.C. Company escrow check was written by Harold Crum. ICC then funded a lease finance account for H.T.C. Company in the amount of $226,310, of which $94,272 was for equipment and the remainder was dedicated for complementary services. After making deductions for the equipment, one year's maintenance, the escrow money that had been advanced, and a few other incidental items, H.T.C. received a check for $104,-537.50. The file contains a letter from Com-Tec written by Daina Wilburn to Harold Crum at H.T.C. Company in which ComTec agreed to purchase unspecified equipment from H.T.C. Company for $141,990, out of the lease proceeds paid by ICC to ComTec. However, no payment was made by ComTec and no equipment was delivered by H.T.C Company.

John Gilbert owned two used car businesses called Three G Brokers and I–Jon Enterprises. In March or April of 1990, Garry Wilburn, Daina Wilburn, Harold Crum, and George Thurman approached Gilbert to discuss a "venture with IBM." Thurman told Gilbert he could lease computer equipment and receive a substantial amount of money in the process. Gilbert was told it would cost him no money to get involved in the program; he would just place a computer order under one of his company names and would receive cash. Gilbert, Crum, and Springer operated under the name of G.C.S. Enterprises.

Leonard Claus testified that he signed leases for IBM equipment on behalf of John Gilbert under Gilbert's company names. He further testified that the companies never used the computer equipment. Claus testified that Harold Crum told him to bring in friends to G.C.S. Enterprises and if they signed up for an IBM lease, they would receive twenty to thirty thousand dollars in cash. Claus also testified that he overheard Daina and Garry Wilburn, Harold Crum, John Gilbert, and Mr. Springer discussing making up company names.

## SUFFICIENCY OF THE EVIDENCE

■ In their first point of error, appellants claim the evidence is insufficient to support their convictions because the State failed to prove that all eleven people named in the application paragraph of the jury charges were members of or participants in the criminal combination. Appellants were indicted under section 71.02 of the Penal Code, which states that a person engages in organized crime if he commits or conspires to commit enumerated offenses while participating in a combination. A combination is defined as "three or more persons who collaborate in carrying on criminal activities[.]" TEX. PENAL CODE ANN. § 71.01(a) (Vernon 1994). The underlying indictments in this appeal alleged the names of eleven persons who were members of the combination, namely, Robert Munkatchy, Daina Wilburn, Garry Wilburn, C.L. Cook, James Bond, George Thurman, Charles Tovey, John Gilbert, Harold Crum, Robert Pennington, and Rita Pennington.

Appellants raise the issue of whether the State increased its burden of proof by its use of the conjunctive **"and,"** instead of the disjunctive **"or,"** in the charging paragraph.[3] Appellants, relying on *Ortega v. State*, 668 S.W.2d 701 (Tex.Crim.App.1983), and *Fee v. State*, 841 S.W.2d 392 (Tex.Crim.App.1992), argue that because the State did not object

3. The application paragraph of the jury charge tracked the indictment as follows:

Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, the defendant [appellant's name], did then and there unlawfully with intent to establish, maintain or participate in a combination or the profits of a combination, *said combination consisting of Robert Munkatchy, Daina Wilburn, Garry Wilburn, C.L. Cook, James Bond, George Thurman, Charles Tovey, John Gilbert, Harold Crum, Robert Pennington, and Rita Pennington,* commit the felony offense of theft over twenty thousand dollars, and in furtherance of said organized criminal activity, said [appellant], heretofore on or about [date], pursuant to one scheme and continuing course of conduct, did then and there unlawfully appropriate by acquiring or otherwise exercising control over property, namely, money, and the total value of the property so obtained was more than twenty thousand dollars, owned by IBM Credit Corporation, with intent to deprive IBM Credit Corporation of the property, then you will find the defendant guilty of engaging in organized criminal activity, as charged in the indictment. (emphasis added)

to the charge, it necessarily accepted the burden of establishing that all eleven people named in the indictment were members of the combination. Because, by its own admission, the State did not prove six of the people named were members of the combination, appellants argue the evidence is insufficient to support their convictions.

The State responds that examining the charge as a whole and considering the statutory definition of combination included in the charge, it is clear the jury was required to find only that three or more of the persons listed participated in the combination. The jury charge tracked the statutory definition of "combination" and instructed the jury that it is not a defense to prosecution that "one or more members of the combination are not criminally responsible for the object offense[.]" *See* Tex. Penal Code Ann. § 71.03.

Faced with nearly identical language in the jury charge,[4] the First Court of Appeals concluded that the State was not required to prove that each person listed in the charge participated in a combination with appellant. *Jones v. State*, 907 S.W.2d 850, 854 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). As in the present case, the term combination in the *Jones* charge tracked the statutory definition set out in the penal code. As in the present case, the application paragraph of the charge listed the names of the other members of the combination in the conjunctive. Unlike the present case, however, the application paragraph in *Jones* reiterated that a combination consists of three or more persons. The *Jones* court reasoned that the jury could have logically inserted the definition of combination from the charge into the

application paragraph. *Id.* Because such a reading of the charge would only require the jury to find appellant participated in a combination including at least two of the other fifteen persons named in the charge, the *Jones* court concluded the State did not elevate its burden to prove that all those listed participated in the combination. *Id.*

■ The language in the charge before us is not identical to the *Jones* charge. However, the failure of this charge to repeat the definition of combination in the application paragraph neither affects the charge's meaning nor increases the State's burden of proof. It is unnecessary and unworkable to repeat every abstract definition in the application paragraph. *See, e.g., Dinkins v. State*, 894 S.W.2d 330 (Tex.Crim.App.1995), *cert. denied*, — U.S. —, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995) (jury charge not defective which omitted culpable mental state in application paragraph where definition given in abstract portion of charge). Because we find the analysis by the First Court to be correct, we will follow the holding in *Jones*.[5]

Further, the cases relied upon by appellants are distinguishable. In *Fee*, the charge expressly instructed that in order to convict, the jury must find appellant and all six other individuals alleged in the indictment conspired to commit and did commit theft with the intent to facilitate the aims of a combination. *Fee*, 841 S.W.2d at 396. The insufficiency was in the proof of those who conspired to commit theft and not in the proof of the membership of the combination. *Id.* Thus, even though the jury charge in *Fee* contained a definition of the term combination, it could not qualify who was alleged to

4. The charge in *Jones* read, in part, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that ... [appellant] ... did unlawfully, intentionally or knowingly, with intent to establish, maintain, or participate in a combination or in the profits of a combination of three or more persons who collaborate [sic] in carrying on criminal activities, namely, forgery, said combination being made up of [appellant], [names of fourteen individuals] and [another individual] and [appellant] acting alone or with other member of the combination as a party to the offense ... did commit the offense of forgery ...
> *Id.*

5. As noted above, the jury was also instructed that it is not a defense to prosecution that one or more members of the combination are not criminally responsible for the object offense, have been acquitted, have not been prosecuted or convicted, or have been convicted of a different offense. The State argued, without objection, that this instruction relieved the state of any burden of proving the participation of C.L. Cook, George Thurman, Charles Tovey, John Gilbert, Robert Pennington, and Rita Pennington. This additional instruction adds further support to our conclusion that the charge, when read as a whole, did not require proof that all eleven were members of the combination.

have conspired to commit and did commit theft.

In *Ortega,* the application portion of the charge instructed the jury that if they found that appellant did, "with the intent to fraudulently obtain property *and services* ... present a credit that had not been issued to him, then they will find appellant guilty as charged." *Ortega,* 668 S.W.2d at 706 (emphasis in original). The court found that the allegation "and services," although unnecessary, described an essential element and could not be disregarded as surplusage. The court was thus faced with a different question than we seek to answer. Unlike the present case, there was no definitional instruction in *Ortega* which, if read in conjunction with the application paragraph, could have allowed the jury to convict without a finding of intent as to both property and services. Accordingly, appellants' first point of error is overruled.

◼ In their second point of error, appellants claim the evidence does not prove beyond a reasonable doubt that appellants committed the object theft offenses alleged in their respective indictments. When reviewing the sufficiency of the evidence, the appellate court will look at all the evidence in the light most favorable to the verdict or judgment. *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App.1984). In so doing, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

Appellants state in their brief:

There is minimally sufficient evidence from which the jury reasonably could have inferred that ComTec "deceived" ICC, in the sense contemplated by Tex. P.C. § 31.01(2), by having allegedly failed to disclose to ICC representatives that ComTec was advancing the escrow deposits, and that the money received by ComTec for complementary charges was being paid directly to customers in cash, rather than being used in the provision of goods and services. But ComTec was neither charged with nor convicted of that offense.

While appellants contend there is no evidence they appropriated money owned by ICC, they concede there may be evidence that ComTec deceived ICC and that they received substantial sums of money from ComTec. Appellants claim that ComTec, as a corporation, committed the offense of theft by deception.

An individual is criminally responsible for conduct that he performs in the name of or on behalf of a corporation or association to the same extent as if the conduct were performed in his own name or behalf. TEX. PENAL CODE ANN. § 7.23(a). If an individual is convicted of conduct constituting an offense performed in the name of or on behalf of a corporation or association, he is subject to the sentence authorized by law for an individual convicted of the offense. TEX. PENAL CODE ANN. § 7.23(c). Appellants deceived ICC by creating a false impression that ComTec was providing computer equipment and complementary services to legitimate businesses that had submitted substantial sums of their own money as escrow. *See* TEX. PENAL CODE ANN. § 31.01(1).

◼ Under section 7.23(a), appellants are criminally responsible for acts performed on behalf of ComTec. The record is replete with evidence that appellants represented to ICC that they were leasing computers to reputable businesses with enough cash reserves to pay the escrow required by ICC. Appellants knew when they made these representations that they would pay the escrow by using false business entities. Appellants also knew that the entities they presented to ICC as legitimate businesses in need of computer equipment either did not exist, or needed cash more than computers. Reviewing the record in the light most favorable to the verdict, we find a rational trier of fact could have found that appellants committed the object offenses alleged in their respective indictments. Appellants' second point of error is overruled.

◼ In their third and fourth points of error, appellants claim the evidence is insufficient to prove that they intended "to establish, maintain and participate in a combina-

tion and in the profits of a combination," and that they acted "pursuant to one scheme and continuing course of conduct," as alleged in the indictments. Appellants argue there is no evidence that Munkatchy worked together with the remaining appellants or that the transactions were anything other than separate and distinct financial transactions.

Contrary to appellants' assertions, the evidence reflects that it was the organized acts of all appellants which deceived ICC and ultimately caused such a tremendous financial loss to the company. ICC believed it was funding leases to many different business entities. To perpetuate this belief, the Wilburns, Crum, Gilbert, and Springer created fictitious business entities. The bank records show numerous checks flowing between the fictitious corporations. The testimony shows that Munkatchy intended to deceive ICC by issuing checks from different companies as escrow checks. Reviewing the evidence in the light most favorable to the jury's verdict, we find a rational trier of fact could have found that appellants acted pursuant to one scheme and continuing course of conduct to establish, maintain, and participate in a combination and in the profits of a combination. Appellants' third and fourth points of error are overruled.

## INDICTMENTS

■ In points of error five through eleven, appellants complain of various alleged defects in their individual indictments. As a preliminary matter, we note that by failing to file motions to quash, James Bond and Garry Wilburn failed to preserve error with regard to any defects in the indictments. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b). Further, with regard to points of error five through eight, Daina Wilburn failed to preserve error by failing to raise those issues in his motion to quash.

■ In their fifth point of error, appellants claim the indictments failed to state an offense under section 71.02(a)(1) of the Texas Penal Code because the indictments alleged that the purported thefts "furthered" organized criminal activity. For an indictment to be sufficient in a prosecution under section 71.02(a)(1), for engaging in organized criminal activity by committing theft, the indictment must allege that the defendant: (1) committed theft under chapter 31 of the Penal Code, and (2) did so with the intent to establish, maintain, or participate in a combination or in the profits of a combination. *See State v. Duke,* 865 S.W.2d 466, 467–68 (Tex. Crim.App.1993). Munkatchy and Crum's indictments state, in pertinent part:

> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, [the appellant], hereafter styled the Defendant, did unlawfully *with intent to establish, maintain and participate in a combination and in the profits of a combination,* said combination consisting of Robert Munkatchy, Daina Wilburn, Garry Wilburn, C.L. Cook, James Bond, George Thurman, Charles Tovey, John Gilbert, Harold Crum, Robert Pennington, and Rita Pennington, commit the felony offense of theft over twenty thousand dollars, and *in furtherance of said organized criminal activity,* said [appellant], heretofore on or about and between February 15, 1990 and September 1, 1990, pursuant to one scheme and continuing course of conduct, did then and there unlawfully appropriate, by acquiring and otherwise exercising control over property, namely, money, and the total value of the property so obtained was more than twenty thousand dollars, owned by IBM Credit Corporation, hereafter styled the Complainant, with intent to deprive the Complainant of the property. (emphasis added).

Appellants contend that acting "in furtherance of said organized criminal activity" does not violate the provisions of section 71.02. In other words, appellants claim the substitution of the phrase "in furtherance of said organized criminal activity" stated a different offense than the offense charged under section 71.02. It is clear, however, that the phrase "in furtherance of said organized criminal activity" refers to the previous use of the phrase, "with intent to establish, maintain and participate in a combination and in the profits of a combination."

The phrase "with intent to establish, maintain and participate in a combination and in the profits of a combination" clearly has a technical meaning and, as such, may not be omitted from the indictment. *State v. Kinsey,* 861 S.W.2d 383, 384 (Tex. Crim.App.1993). It is not necessary to use the exact language of the statute defining the offense charged, but substituted words must convey the same meaning or include the sense of the statutory word. *Id.* The phrase "in furtherance of said organized criminal activity" was used as a substitute for the phrase "with intent to establish, maintain and participate in a combination and in the profits of a combination." The indictment tracked the language of the appropriate subsections of section 71.02, thereby adequately charging appellants with the offense of organized criminal activity. *See Clayton v. State,* 652 S.W.2d 950, 956 (Tex.Crim.App.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). The inclusion of the phrase "in furtherance of said organized criminal activity" did not render the indictments defective. Appellants' fifth point of error is overruled.

In their sixth point of error, appellants claim the indictments fail to allege a culpable mental state in furthering the alleged organized criminal activity. In their seventh point of error, appellants claim the indictments fail to allege a "date certain" on which the offenses of engaging in organized criminal activity occurred. Points six and seven rely on appellants' contention that the addition of the phrase "in furtherance of said criminal activity" stated a different offense than the offense charged under section 71.02. Because we have rejected this contention in our disposition of point of error five, we overrule appellants' sixth and seventh points of error.

In their eighth point of error, appellants claim their indictments fail to allege any "overt acts" committed in furtherance of the combination. A defendant may be charged with engaging in organized criminal activity if he (1) commits one of the enumerated offenses listed in section 71.02, or (2) conspires to commit one of the offenses listed in section 71.02. If the State alleges that a defendant conspired to commit one of the offenses, it must also show that the defendant agreed with one or more persons to commit the offense and that the defendant committed an overt act with at least one other person pursuant to that agreement. TEX. PENAL CODE ANN. § 71.01(b) (Vernon 1994). On the other hand, when the State alleges that a defendant has committed, rather than has conspired to commit, one of the enumerated offenses, there is no requirement that it allege or prove the existence of any overt acts. *See Duke,* 865 S.W.2d at 468. Because appellants' indictments allege that each appellant committed the specific offense of theft, the State was not required to plead or prove any overt acts. Appellants' eighth point of error is overruled.

In their ninth point of error, appellants claim the indictments failed to provide fair notice of the facts of the offense charged. A motion to quash should be granted only when the language concerning the defendant's conduct is so vague or indefinite as to deny him effective notice of the acts he allegedly committed. *DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex.Crim.App. 1988). To survive a timely motion to quash, the indictment, on its face, must contain allegations of the facts necessary to show that the offense was committed, to bar subsequent prosecution for the same offense, and to give the defendant notice of precisely what he is charged with. *Id.* Upon review, we must first determine if the notice given is sufficient. If it is, our inquiry is ended; if not, the record must be examined to determine the impact of the deficiency on appellants' defense and its extent. *Hillin v. State,* 808 S.W.2d 486, 488 (Tex.Crim.App. 1991).

Appellants complain it was impossible for them to determine what they did to commit the offense of engaging in organized criminal activity. In an organized crime case, the State need not allege the manner and means by which the underlying theft was committed. *See Lucario v. State,* 658 S.W.2d 835, 837 (Tex.App.—Houston [1st Dist.] 1983, no pet.). Unless a fact is essential to notice, the indictment need not plead the evidence relied upon by the State. *Liv-*

*ingston v. State,* 739 S.W.2d 311, 321 (Tex. Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). An indictment that tracks the language of the statute is legally sufficient and the State need not allege facts that are merely evidentiary in nature. *Id.* Because the indictment tracked the appropriate language of section 71.02 adequately charging appellants with the offense of engaging in organized crime, the trial court did not err in refusing to quash the indictments. Appellants' ninth point of error is overruled.

■ In their tenth point of error, appellants claim that the indictments for Robert Munkatchy and Daina Wilburn fail to alleged a date certain on which the theft offenses were committed. The indictments against Robert Munkatchy and Daina Wilburn alleged that the thefts committed by them while they were participating in the combination were committed "on or about and between February 15, 1990 and September 1, 1990." Appellants contend the State was required to set forth specific dates on which the thefts occurred. This language sufficiently alleged the date on which the continuing offense of theft took place. *See Green v. State,* 880 S.W.2d 797, 801 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (indictment that alleged theft was "pursuant to one scheme and continuing course of conduct which began on or about the 24th day of February, 1990 and continued until on or about the 30th day of January, 1991" found sufficient). The tenth point of error is overruled.

■ In their eleventh point of error appellants contend the indictments for Robert Munkatchy and Daina Wilburn misjoin multiple theft offenses and if the State intended to rely on more than one theft, it was obliged to set forth each theft in a separate paragraph. Appellants claim the State improperly joined several theft offenses by failing to comply with article 21.24(a) of the Code of Criminal Procedure. Article 21.24(a) states:

> Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the

same criminal episode, as defined in Chapter 3 of the Penal Code.

Section 31.09 of the Penal Code, however, creates one offense that cannot be severed. *Brown,* 640 S.W.2d at 278. Section 31.09 states:

> When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense.

Although a theft under section 31.09 is made up of two or more incidents of theft, the statute makes them one offense. *Brown v. State,* 640 S.W.2d 275, 278 (Tex.Crim.App. 1982). The statute provides that if an actor adopts and pursues a single "scheme or continuing course of conduct" for acquiring property or services in a manner that constitutes theft, he may be convicted of a felony even though he is careful to limit the theft from each individual or at each time and place to a misdemeanor amount. This provision reflects the determination that the reprehensibility of an actor, and thus the appropriate penal sanction, is not necessarily determined by the amount he steals at a single moment from a single person. Searcy & Patterson, *Practice Commentary,* TEX. PENAL CODE ANN. § 31.09. The statute, in fact, so binds the individual incidents of theft into one offense, that there is no vehicle by which the defendant can compel a severance. *Lehman v. State,* 792 S.W.2d 82, 85 (Tex.Crim. App.1990). Because the offenses cannot be severed, the State was not required to set forth several thefts in distinct paragraphs. Appellants' eleventh point of error is overruled.

### JURY CHARGE

■ In their twelfth point of error, appellants claim the trial court erred in submitting a charge to the jury in which the application paragraph contained a comment on the weight of the evidence. In the cases of Daina Wilburn, Garry Wilburn, James Bond,

and Harold Crum, the trial court submitted the following instruction: [6]

> Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, the defendant [appellant's name], did then and there unlawfully with intent to establish, maintain or participate in a combination or the profits of a combination, *said combination consisting of Robert Munkatchy, Daina Wilburn, Garry Wilburn, C.L. Cook, James Bond, George Thurman, Charles Tovey, John Gilbert, Harold Crum, Robert Pennington, and Rita Pennington,* commit the felony offense of theft over twenty thousand dollars, and in furtherance of said organized criminal activity, said [appellant], heretofore on or about [date], pursuant to one scheme and continuing course of conduct, did then and there unlawfully appropriate by acquiring or otherwise exercising control over property, namely, money, and the total value of the property so obtained was more than twenty thousand dollars, owned by IBM Credit Corporation, with intent to deprive IBM Credit Corporation of the property, then you will find the defendant guilty of engaging in organized criminal activity, as charged in the indictment.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt therof [sic], you will acquit the defendant and say by your verdict "Not Guilty."

(emphasis added).

Appellants contend the emphasized portion should have been prefaced with "if you further find" or some other language indicating that the jury must find beyond a reasonable doubt the membership of the combination. Appellants contend the charge allows the jury to convict without first finding that the persons listed were members of the combination.

In support of their contention, appellants cite *Andrews v. State,* 652 S.W.2d 370 (Tex. Crim.App.1983). The application paragraph in *Andrews* reads as follows:

> Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, William Andrews, in Harris County, Texas, on or about the 7th day of August, 1980, did, knowing the content and character of the material, intentionally sell to O.W. Farrell *obscene* material, namely one magazine entitled "Swedish Erotica No. 25" *which depicts and describes patently offensive representations of actual or simulated sexual* intercourse, and oral sodomy, then you will find the defendant guilty of the alleged offense. If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty. (emphasis added).

*Id.* at 373.

The Court of Criminal Appeals held that the application paragraph of the charge eliminated from the State's burden a key element of the offense it had to prove before a valid conviction could occur, that is, whether the magazine depicted and described patently offensive representations of actual or simulated sexual intercourse, anal intercourse, and oral sodomy. *Id.* at 374. The court further held that the application paragraph was subject to the defendant's objections and the trial court erred in overruling the objection. *Id.*

■ The charge in this case does not suffer from the same infirmity as the charge

---

**6.** The charge given in Robert Munkatchy's case was substantially different from his four codefendants. In Munkatchy's case, the application paragraph read as follows:

> Therefore, if you find from the evidence beyond a reasonable doubt that from on or about February 15, 1990 to on or about September 1, 1990, in Harris County, Texas, the defendant, Robert Munkatchy, pursuant to one scheme and continuing course of conduct, did then and there unlawfully appropriate property, namely, money, of the value of more than $20,000.00, owned by IBM Credit Corporation, and if you further find beyond a reasonable doubt that the defendant acted with intent to deprive the owner of the property, and with intent to establish, maintain, or participate in a combination or the profits of a combination, and *if you further find from the evidence beyond a reasonable doubt* that the alleged combination consisted of Robert Munkatchy, Daina Wilburn, Garry Wilburn, C.L. Cook, James Bond, George Thurman, Charles Tovey, John Gilbert, Harold Crum, Robert Pennington, and Rita Pennington, then you will find the defendant guilty of engaging in organized criminal activity, as charged in the indictment.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

in *Andrews*. In the first sentence of the application paragraph, the jury was instructed, "if you find from the evidence beyond a reasonable doubt." That phrase modifies every subsequent phrase in the application paragraph. Reading the application paragraph as a whole, each separate portion, including the complained of phrase, incorporates the opening phrase. Thus, the charge, reasonably construed, requires the jury to believe each element beyond a reasonable doubt. The court's use of the words "said combination consisting of" was not an assumption of a disputed fact, nor was it a comment on an element of the offense in the charge. *See Collins v. State*, 800 S.W.2d 267, 270 (Tex.App.—Houston [14th Dist.] 1990, no pet.). Point of error twelve is overruled.

In their thirteenth point of error, appellants claim the trial court erred in defining the term "overt acts" in the jury charge. The trial court instructed the jury as follows in the cases of Daina Wilburn, Garry Wilburn, James Bond, and Harold Crum:

> Texas law requires only that a member of the combination perform an overt act in furtherance of the combination and that he do so with intent to establish, maintain, or participate in a combination or the profits of a combination. There is no requirement that an overt act be performed along with all three members of the combination.

Appellants objected to the inclusion of this definition.

■ The term "overt acts" only applies to cases where the State attempts to prove the combination conspired to commit an enumerated offense. In this case, the State charged appellants with commission of the offense of theft with the intent to establish, maintain, or participate in a combination. Therefore, no instruction on overt acts was necessary. Any error in the inclusion of such an instruction, however, is harmless.

■ If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if there was some harm to the accused from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984). A reversal is required if the accused has suffered any actual, rather than theoretical, harm from the error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim. App.1986). It is appellants' burden to persuade this court that they suffered actual harm as a consequence of the charging error. If they are unable to do so, the charging error will not result in a reversal of the conviction. *See Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994). In determining whether a charge error requires reversal, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

In light of the remainder of the jury charge, the evidence adduced, and the closing arguments of counsel, we are not persuaded that the error in the abstract definitional portion of the charge made any contribution to the jury's verdict. The term "overt acts" is not applied to any of the appellants in the application paragraphs of their jury charges. Nor was the term unduly emphasized in the prosecutor's closing argument. Rather, in each case, the jury was required to find that the appellants committed the offense of theft, which arguably created a higher burden for the State. Accordingly, we find the inclusion of a definition of the term "overt acts" was harmless error.[7] Appellants' thirteenth point of error is overruled.

## SEVERANCE

■ In their fourteenth point of error, appellants claim the trial court erred in denying Robert Munkatchy's and Daina Wilburn's motions for severance. Robert Munkatchy filed a motion for severance on December 28, 1992. The trial judge granted Munkatchy's motion on January 24, 1993. Nothing in the

---

7. We note that at the time this case was tried, one court of appeals had held that the commission of some overt act is always an element of the offense of engaging in organized criminal activity. *State v. Horstman*, 829 S.W.2d 903 (Tex. App.—Fort Worth 1992), *rev'd*, 865 S.W.2d 466 (Tex.Crim.App.1993). That decision was not overruled by the court of criminal appeals until after appellants' trials had concluded.

record indicates why Munkatchy was not tried separately since his motion was granted. Because Munkatchy was not denied relief by the trial court, he cannot complain on appeal.

Daina Wilburn filed a motion for severance on March 24, 1993. The record does not contain a ruling on Wilburn's motion. A party fails to preserve error if the party fails to first allow the trial court an opportunity to make a ruling. TEX.R.APP. P. 52(a); *Martinez v. State*, 867 S.W.2d 30, 33 (Tex.Crim. App.1993), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994). Thus, Daina Wilburn failed to preserve error with regard to this point. Appellants' fourteenth point of error is overruled.

### HEARSAY

■ In the fifteenth point of error in the appellants' joint brief, and in the sixth point of error in Daina Wilburn's supplemental brief, Daina Wilburn claims the trial court erred in allowing the admission of hearsay statements made by Robert Munkatchy. In the joint brief filed by all appellants, Wilburn complains of statements made by ICC employees. At a meeting between Munkatchy and ICC representatives, Munkatchy told the ICC representatives that he thought Daina Wilburn was a "crook" and that Wilburn was selling computers to companies that did not exist. In his supplemental brief, Wilburn complains of statements made by Peggy Busby, Kevin McCloud, an IBM auditor, and Tom Hadley, a former ComTec salesperson. Each of those people also testified to Munkatchy's concerns that Wilburn was selling computers to non-existent companies. Appellant contends the testimony was inadmissible hearsay and was not admissible under Rule 801(e)(2)(E) of the Texas Rules of Criminal Evidence.

■ An out-of-court statement offered in evidence to prove the truth of the matter asserted is not hearsay if it is offered against a party and is a statement by a co-conspirator made during the course of, and in furtherance of, the conspiracy. TEX.R.CRIM. EVID. 801(e)(2)(E). To avail itself of the co-conspirator exception to the hearsay rule, the State must demonstrate that (1) a conspiracy existed; (2) the statement was made during the course of and in furtherance of the conspiracy; and (3) both the declarant and appellant were members of the conspiracy. *See Deeb v. State*, 815 S.W.2d 692, 697 (Tex. Crim.App.1991), *cert. denied*, 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992).

■ When two or more people take part in the commission of a felony, evidence of a conspiracy is admissible even though the substantive crime of conspiracy is not charged. *Meador v. State*, 812 S.W.2d 330, 332 (Tex.Crim.App.1991). A conspiracy exists where two or more persons, as shown by words or deed, agree to do an unlawful act. *Butler v. State*, 758 S.W.2d 856, 860 (Tex. App.—Houston [14th Dist.] 1988, no pet.). A conspiracy may be established by circumstantial evidence. *Id.*

■ Statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators; (2) with intent to induce another to join the conspiracy; (3) in formulating future strategies of concealment to benefit the conspiracy; (4) with intent to induce continued involvement in the conspiracy; or (5) for the purpose of identifying the role of one conspirator to another. *Williams v. State*, 815 S.W.2d 743, 746 (Tex.App.—Waco 1991), *rev'd on other grounds*, 829 S.W.2d 216 (Tex.Crim.App. 1992). Conversely, statements that are not in furtherance of a conspiracy, and thus remain hearsay, include those that are (1) casual admissions of culpability to someone the declarant had individually decided to trust; (2) mere narrative descriptions; (3) mere conversations between conspirators; or (4) "puffing" or "boasts" by co-conspirators. *Id.*

Appellant claims the statements were not made during the course of the conspiracy, nor were they made in the furtherance of the conspiracy. Munkatchy's statements, although arguably made during the course of the conspiracy, were not made in furtherance of the conspiracy. *See Deeb*, 815 S.W.2d at 697. Therefore, the admission of the statements made by Munkatchy was error.

Accordingly, we must reverse the judgment as to Daina Wilburn unless we determine beyond a reasonable doubt that the error made no contribution to the conviction. TEX.R.APP. P. 81(b)(2). To make this determination, we examine the other evidence showing that Daina Wilburn participated in the combination or in the profits of the combination. *See Speer v. State,* 890 S.W.2d 87, 95 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). We must determine from a review of the record whether the minds of an average juror would have found the State's case significantly less persuasive had the testimony at issue been excluded. *Flores v. State,* 681 S.W.2d 94, 97 (Tex.App.—Houston [14th Dist.] 1984), *aff'd,* 690 S.W.2d 281 (Tex. Crim.App.1985).

John Gilbert testified that in March or April of 1990, Daina Wilburn, Garry Wilburn, Harold Crum, and George Thurman approached him with the opportunity to lease computer equipment and receive a substantial amount of money in the process. Leonard Claus testified that he had overheard Daina Wilburn, Garry Wilburn, Harold Crum, John Gilbert, and Mr. Springer discussing fake company names. Pamela Steinmetz testified that she issued escrow checks at Munkatchy's and Daina Wilburn's instructions. Further, Daina Wilburn was listed as an officer and a signatory on the account of Paloma Blanca, Inc., a company determined to be fictitious. The evidence at trial revealed a complex web of deception perpetrated by all appellants. The fact that Munkatchy, when confronted by IBM employees, attempted to lay blame on Daina Wilburn would not have made the State's case significantly less persuasive in the mind of the average juror. Based on this evidence, we find beyond a reasonable doubt that the error made no contribution to the conviction. Appellants' fifteenth and Wilburn's sixth points of error are overruled.

## SUPPLEMENTAL POINTS OF ERROR

Daina Wilburn filed a supplemental brief raising six points of error which duplicate points of error raised in the joint appellants' brief. Accordingly, Wilburn's six points of error are overruled.

Garry Wilburn filed a supplemental brief with two points of error claiming the trial court abused its discretion in allowing the jurors to take notes. The trial judge advised the jurors before testimony began that they could take notes if they chose to do so. He cautioned them, however, that the notes were to be used only by the individual jurors who took them, and that if the jurors disagreed about any testimony, the court reporter would read the transcription of the testimony. Appellant contends that the trial judge abused his discretion in permitting jurors to take notes and, if the trial judge did not abuse his discretion in allowing the jury to take notes, he erred in failing to properly admonish them.

The decision to allow jurors to take notes and consult them during deliberation is within the sound discretion of the trial judge. *Johnson v. State,* 887 S.W.2d 957, 958 (Tex. Crim.App.1994). In *Price v. State,* 887 S.W.2d 949 (Tex.Crim.App.1994), the court suggested that trial judges should give certain precautionary admonishments to the jury concerning note-taking. The court found the trial judge should: (1) determine if juror note-taking would be beneficial in light of the factual and legal issues to be presented at trial; (2) inform the parties, prior to voir dire, that jurors would be permitted to take notes; (3) admonish the jury at the time it is impaneled; and (4) instruct the jury in the jury charge as to the proper use of its notes during deliberation. *Id.* at 954–55.

In this case, the record does not show if the trial judge followed the second step listed above, informing the parties prior to voir dire that juror note-taking would be permitted. The record does show that the trial judge determined that due to the length and complexity of the trial note-taking would benefit the jury and admonished the jurors at the time they were impaneled on the proper use of their notes during deliberation. Although the trial judge did not give written admonishments in the jury charge, none were requested. We find the trial judge did not abuse his discretion in allowing jurors to take notes and substantially complied with the admonishments suggested in *Price.* Gar-

ry Wilburn's supplemental points of error are overruled.

The judgment of the trial court is affirmed.

LEE, Justice, dissenting.

I respectfully dissent to the disposition of appellants' first point of error. This case is controlled by *Fee v. State*, 841 S.W.2d 392 (Tex.Crim.App.1992). In *Fee*, the court found that, despite instructions on the definition of the term combination and the defenses excluded from the organized criminal activity statute, the jury would have been required to find that the appellant and all others alleged in the application paragraph conspired to commit theft as a prerequisite to convicting the appellant. The application paragraph in *Fee* reads, in relevant part:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that on or about the 11th day of August A.D., 1983, Jose L. Araujo, Thomas Scott Bates, Steven Fee, Benjamin A. Morgan, Jerry Lee Pierce, Jose Jorge Trevino, Jr., and James Henry Woerner, Jr., ... together with others unknown to this Grand Jury, with intent to establish, maintain and participate in a combination and in the profits of a combination, did conspire and agree to commit and did commit the criminal offense of Theft over $20,000.00, and in pursuance of such agreement the said defendants performed overt acts as follows, to wit: ...

The court held that, because the State failed to object to the trial court's charge and failed to present evidence against three members of the combination, the evidence, as measured against the application paragraph of the charge, was insufficient to convict Fee. *Id.* at 396. The court reached this conclusion despite the fact that the charge contained a definition of the term "combination" and an instruction that it is no defense to a combination that one or more members is found not guilty.

The court in *Fee*, noted that the case before it was analytically indistinguishable from *Ortega v. State*, 668 S.W.2d 701 (Tex.Crim. App.1983). Ortega was prosecuted for credit card abuse. The indictment alleged he knowingly used the credit card of another with the specific intent to fraudulently obtain property and services. The application paragraph in the court's charge tracked the language of the indictment and instructed the jury to find Ortega guilty of credit card abuse if the jury found that he knowingly used the credit card of another with specific intent to fraudulently obtain property *and* services. The court of criminal appeals found that the State was bound to prove Ortega intended to fraudulently obtain property *and* services and remarked that "there is no such thing as 'surplusage' in the part of the court's instructions to the jury which authorizes conviction[.]" *Id.* at 705, n. 10.

The majority attempts to distinguish *Fee* and *Ortega* by stating that the application paragraphs in those cases unnecessarily included language that was descriptive of an essential element of the offense and, therefore, could not be considered surplusage. The court of criminal appeals has held, however, that the rule applies regardless of whether the language is descriptive of an essential element. *Langston v. State*, 855 S.W.2d 718 (Tex.Crim.App.1993).

In *Langston*, the court held that the State's burden was elevated in a trespass case because the trial court included the name of the owner of the property in the application paragraph. The court noted that the identity of the owner is not an essential element of criminal trespass. The State, however, by failing to object to the inclusion of the owner's name in the application paragraph, was required to prove the identity of the owner of the property. *Id.* at 721. Therefore, the fact that the membership of the combination is not an essential element of the offense has no bearing on appellant's first point of error.

The majority relies on the holding in *Jones v. State*, 907 S.W.2d 850 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd), for the proposition that the application paragraph in this case did not elevate the State's burden of proof. In *Jones*, the First Court of Appeals had a similar situation: an application paragraph that listed fifteen persons as being members of the combination, but no evidence

against some of the people listed as members of the combination. The application paragraph in *Jones* differed from the paragraph in this case in that, in *Jones,* the application paragraph qualified combination as consisting of three or more persons. The court held that applying the definition of combination given in the charge *and the qualification of that term in the application paragraph,* the State was not required to prove the participation of all those persons listed in the charge in a combination with the appellant.

In the case before us, the application paragraph does not qualify the term combination. The application paragraph in this case is almost identical to the one in *Fee* where the court of criminal appeals held the State failed to meet its burden. The charge in this case authorized conviction only in the event the jury should find that all eleven persons participated in the combination. This elevated the State's burden of proof beyond the minimum necessary to establish a violation of the statute. As long as the State does not object to a jury charge that enhances its burden, sufficiency of the evidence will be measured against that charge. The State's response does not propose a rational basis to deviate from that rule in this case. I would sustain appellants' first point of error, reverse the conviction, and render judgment of acquittal.

## OPINION ON REHEARING

YATES, Justice.

In his motion for rehearing, appellant, Daina Wilburn, correctly asserts that this court failed to address his point of error alleging the trial court erred in denying his motion for severance. In their fourteenth point of error, appellants claimed the trial court erred in denying Robert Munkatchy's and Daina Wilburn's motions for severance. On original submission, we determined that the record did not contain a ruling on Wilburn's motion. On motion for rehearing, Wilburn points out that the trial judge denied his motion for severance during a pretrial conference prior to voir dire of the jury panel.

In a pretrial motion to sever, Daina Wilburn contended he was entitled to a separate trial because he anticipated that one of his co-defendants planned to "attempt to exonerate himself by pointing the 'finger of guilty' at the others, principally [Daina Wilburn]." At a pretrial conference, prior to voir dire of the jury panel, the trial judge denied Wilburn's motion for severance without a hearing.

Article 36.09 of the Code of Criminal Procedure provides:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, *and evidence introduced thereon,* it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX.CODE CRIM. PROC. ANN. art. 36.09 (Vernon 1981) (emphasis added). Daina Wilburn argues that hearsay statements made by Robert Munkatchy would not have been admitted against him if he had been tried separately. Wilburn, however, failed to offer any such evidence to the trial court at the time the court ruled on his motion to sever. Where no evidence was offered in support of the motion, no error is shown in the absence of such evidence offered at the time the motion was presented and overruled. *Sanne v. State,* 609 S.W.2d 762, 776 (Tex.Crim.App. 1980), *cert. denied,* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981); *Fisher v. State,* 681 S.W.2d 202, 206 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). With regard to Daina Wilburn's motion to sever, appellant's fourteenth point of error is overruled.