**Affirmed and Memorandum Opinion filed August 3, 2017.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-16-00243-CR

### KENNETH RYAN GRIMET, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1459851**

## M E M O R A N D U M   O P I N I O N

Appellant Kenneth Ryan Grimet was convicted of engaging in organized criminal activity and sentenced to 20 years in prison. A defendant commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . , the person commits or conspires to commit" one or more enumerated offenses, including fraudulent use or possession of identifying information. Tex. Penal Code §§ 32.51 (West 2016); 71.02(a)(8) (West Supp. 2016). A combination consists of "three or

more person who collaborate in carrying on criminal activities." *Id*. § 71.01(a) (West 2011). Appellant argues that his conviction should be reversed not because the record, as a whole, is insufficient to support his conviction,[1] but because (1) "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed,"[2] and (2) the non-accomplice evidence is allegedly insufficient to connect appellant with the offense.[3]

Because we find that the non-accomplice evidence is sufficient to connect appellant with the offense, we affirm.

## I. Background

In October 2014, appellant developed a romantic relationship with one of his co-defendants, Crystal Ballinger. Before she met appellant, Ballinger was involved in a scheme to steal identifying information which she used to apply for and obtain credit cards.

On October 16, 2014, Ballinger used a stolen credit card to rent a motel room in Baytown. A clerk at the motel notified the police of the fraudulent transaction, and Officer Juan Barrera with the Baytown Police Department arrived and found

---

[1] In evaluating the legal sufficiency of evidence of guilt, we must consider all of the evidence, including accomplice witness testimony. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

[2] Tex. Code Crim. Pro. art. 38.14 (West 2005).

[3] If the State alleges that the defendant conspired to commit the offense, the State must "show that the defendant agreed with one or more persons to commit the offense and that the defendant committed an overt act with at least one other person pursuant to that agreement." *Crum v. State*, 946 S.W.2d 349, 359 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (citing Tex. Penal Code § 71.01(b)). Appellant contends that the only evidence of the elements of this offense was provided by the three accomplices, and that absent that accomplice testimony, the evidence is insufficient to convict Appellant. Appellant contends that the non-accomplice evidence does not connect him to the offense.

Ballinger, appellant, and Carrie Moore inside of the motel room. Barrera arrested appellant for open warrants in San Augustine County and Ballinger for possessing a fake driver's license. Barrera searched Ballinger's belongings and discovered several new tools which had been purchased online and a stack of other individuals' identifying information.

Barrera delivered the stack of identifying information to Baytown Police Department Detective Kevin Dunlap. Dunlap initiated an investigation regarding the fraudulent use of identifying information and identified Ballinger and appellant as suspects.

Appellant was transferred to the San Augustine jail. On October 31, 2014, Ballinger bonded appellant out of the San Augustine jail. Ballinger admitted that appellant knew that she used a stolen credit card to bond him out. Appellant and Ballinger returned to the Houston area after his release.

On November 6, 2014, appellant and Ballinger came to Cody Ligori's room at the Palace Inn. Although Ligori and his wife Hannah Yaws had never met appellant, they had known Ballinger for about five years. The following day, Ligori checked out of the Palace Inn and into the Scottish Inn, where Ballinger and appellant stayed with Ligori and his family.

On the morning of November 9, 2014, Ligori drove appellant and Ballinger to the Hampton Inn motel on Airport Boulevard. Appellant and Ballinger left Ligori in his car for about thirty minutes. When appellant and Ballinger returned, they told Ligori that they had burglarized a room at the motel to steal documents and that appellant had used a crowbar to open the door to that room. When appellant returned to Ligori's car, he was holding a full duffle bag.

When they returned to his room at the Scottish Inn, Ligori observed that the bag contained papers and the crowbar. Ballinger and appellant removed the papers from the bag and began calling credit card companies to verify names and addresses. Using the identifying information, appellant and Ballinger made online purchases with Ballinger's phone and laptop. After they finished going through the documents, they put them in a milk crate.

Two days later, Ligori drove appellant and Ballinger back to the Hampton Inn motel on Airport Boulevard, knowing that Ballinger and appellant planned on burglarizing another motel room and stealing more identifying information. Appellant and Ballinger brought the bag and the crowbar with them. Ballinger and appellant entered the motel and returned with papers containing social security numbers.

As Ligori was driving Ballinger and appellant back to Ligori's motel room, Officer Gothard with the Pearland Police Department stopped Ligori's vehicle for unconfirmed insurance. During the traffic stop, appellant gave Gothard a false name and date of birth and was taken into custody. During the search of Ligori's vehicle, Gothard observed the crowbar on the floorboard of the front passenger seat, where appellant had been sitting, and recovered the bag containing the stolen documents with the identifying information.

While Ligori, Ballinger, and appellant were in custody, Harris County Sheriff's Office (HCSO) Deputy Ben Katrib interviewed Ligori and learned about the crowbar and Ligori's motel room. Officer Juan Meraz of the Pearland Police Department searched Ligori's vehicle and recovered the crowbar.

With Yaw's consent, HCSO Deputy Andrew Sustaita searched Ligori's motel room and recovered the documents in the milk crate and appellant's and Ballinger's belongings in an adjacent hamper. HCSO Investigator Joshua Nowitz reviewed the

4

documents recovered by Sustaita and discovered that appellant's personal papers were intermingled with the documents containing the identifying information of more than 200 individuals.

## II. Sufficiency of the Corroborating Evidence

In a single issue, appellant claims the non-accomplice evidence is insufficient to connect him with the offense, and that therefore his conviction may not be had upon the testimony of the accomplices. Appellant contends that absent the accomplice testimony, the evidence is insufficient to support his conviction.

## A. Applicable Law

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed . . . ." Tex. Code Crim. Pro. art. 38.14. "[T]he corroboration is not sufficient if it merely shows the commission of the offense." *Id*.

In reviewing the sufficiency of corroboration evidence, "we [must] eliminate the accomplice testimony from consideration and examine the remaining portions of the record for any evidence that tends to connect the accused with the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). "[T]he corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id*. "Rather, the evidence must simply link the accused in some way to the commission of the crime and show that 'rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense.'" *Id.* (quoting *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997)). A defendant's mere presence at the crime scene is insufficient to corroborate accomplice testimony. *Malone*, 253 S.W.3d at 257. However, "'[p]roof that the accused was at or near the scene of the crime at or about the time of its commission,

when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" *Id.* (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). And "[e]vidence that the defendant was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex .Crim. App. 1997); *Lacaze v. State*, 346 S.W.3d 113, 117–18 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Additionally, evidence of a defendant's guilty demeanor, combined with other corroborating circumstances, may tend to connect the defendant with the offense. *Hernandez*, 939 S.W.2d at 178. "The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

"An accomplice is someone who participates with the defendant before, during, or after the commission of a crime, and who acts with a culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). However, the corroboration requirement applies only when the accomplice witness is called by the State. *See Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).

The State admits that the trial court properly instructed the jury that Ligori and Yaws were accomplices and that a conviction could not be had upon their testimony unless it was corroborated by other evidence tending to connect appellant with the offense. However, the corroboration requirement does not apply to Ballinger's testimony because she was called by appellant, not the State, to testify. Thus, for the purpose of determining whether corroborating evidence tends to connect appellant to the offense, Ballinger's testimony is treated as "non-accomplice testimony" or "non-accomplice evidence." Accordingly, we eliminate the testimony

of Ligori and Yaws, but not Ballinger, from consideration, and examine the remaining portions of the record for any evidence that tends to connect appellant with the commission of the crime. *See Malone*, 253 S.W.3d at 257.

**B.      Non-Accomplice Evidence Tends to Connect Appellant with the Offense**

Appellant argues that there is no non-accomplice testimony of certain elements of the offense, namely, that he agreed to participate in the conspiracy; that he committed an overt act in furtherance of the conspiracy; or that he was in possession of items with identifying information. However, whether the non-accomplice evidence is sufficient to prove each element of the offense is not the test. "There need be only some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016) (quoting *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (per curiam) (holding that Article 38.14 does not require corroboration as to defendant's role in an offense as a principal or as a party)). As the Court of Criminal Appeals observed in *Vasquez v. State*, Article 38.14, by its very terms, requires only that there "be some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." 56 S.W.3d 46, 48 (Tex Crim. App. 2001) (holding that Article 38.14 does not require corroboration of accomplice-witness testimony regarding a deadly-weapon finding).

As discussed below, the non-accomplice evidence regarding the traffic stop, the items recovered from Ligori's motel room, and appellant's prior knowledge of Ballinger's unlawful conduct, when combined, tends to connect appellant with the offense.

### 1.      *The Traffic Stop*

Officer Gothard's testimony and a video recording of the traffic stop proved several facts that tend to connect appellant to the offense. Gothard testified that when

he stopped Ligori's vehicle, Ligori, Ballinger, and appellant were in the vehicle together. Gothard identified Ligori as the driver, appellant as the front passenger, and Ballinger as the back-seat passenger. Appellant exhibited a guilty demeanor. Gothard testified that appellant identified himself as "Robert Deese" and provided an incorrect date of birth for that name. A video recording of the traffic stop confirms that appellant provided the false name of "Robert Deese" and date of birth of June 28, 1985.

Gothard testified regarding other suspicious circumstances of the traffic stop. During his inventory of the vehicle and its contents, he observed a duffle bag on the rear driver's side seat which contained identifying information. Gothard looked through the documents in the bag "to ascertain if it was something that was taken in a vehicle burglary or obtained illegally." Several documents inside of the bag included the name and address of the Hampton Inn motel on Airport Boulevard, which Investigator Nowitz identified as the motel that had been burglarized. Although appellant stated that he had no idea where the bag came from, he identified it as Ballinger's bag.

Another suspicious circumstance lay at appellant's feet. Gothard testified that he observed a crowbar on the floorboard in front of the front passenger seat, where appellant had been sitting. Ballinger testified that she had used the crowbar to break into cabinets at the motel containing identifying information. Officer Juan Meraz testified that he later recovered the crowbar from the floorboard of the vehicle.

Appellant's presence with Ligori, Ballinger, and a bag of identifying information burglarized from a motel, combined with appellant's false identification of himself as "Robert Deese," and his proximity to the crowbar used in the break-in, all tend to connect appellant with the offense.

8

## 2. *The Motel Room*

Deputy Sustaita testified that when he searched the motel room, "[i]t appeared that four people were staying in the room." He found a hamper and a red milk crate, which were next to each other on top of a couch. Inside the hamper, Sustaita found documents and items associated with Ballinger and appellant, including property bags labeled with their names, an unstamped letter written by appellant and addressed to Ballinger, prayer documents with their first names, a booking document with appellant's name and photograph, and Harris/Chambers County magistrate's warning forms with appellant's name.

Sustaita testified that the red milk crate was full of documents that contained "a bunch of random people's names and information." He removed the documents from the milk crate, placed them in two separate property bags, and sealed the bags for later review by the HCSO Financial Crimes Unit.

Investigator Nowitz testified that he reviewed the documents seized by Sustaita and found transaction receipts and employment applications with multiple individuals' identifying information, including names, dates of birth, Social Security numbers, and driver's license numbers. He also discovered several documents associated with appellant that were mixed in with the documents containing the identifying information. These documents included San Augustine County magistrate's warning forms, indictments, arrest warrants, and bond documents, all of which were in appellant's name.

The intermingling of appellant's documents with the identifying information he is alleged to have stolen also tends to connect appellant with the offense.

### 3. Appellant's Prior Knowledge of Ballinger's Criminal Activity

Officer Barrera testified that on October 16, 2014, he was dispatched to the Comfort Suites motel in Baytown regarding a possible fraud call. When he arrived, he made contact with Ballinger, Carrie Moore, and appellant. At that time, Barrera identified appellant by his Texas Identification Card. However, he testified at trial that he did not see the man whom he identified as appellant at the motel in the courtroom.

Barrera searched Ballinger's belongings in a car parked outside of the motel room and found a large stack of other individuals' identifying information. Barrera transported Ballinger, Moore, and appellant to the Baytown police station and gave the stack of identifying information to Detective Dunlap.

Dunlap testified that he conducted an investigation regarding the fraudulent use of the identifying information recovered by Officer Barrera and identified appellant and Ballinger as suspects. Dunlap questioned appellant as part of his investigation and asked him about the stack of identifying information. Dunlap was not permitted to testify regarding the contents of his interview with appellant.

Ballinger testified that she bonded appellant out of the San Augustine jail on October 31, 2016, and that appellant knew she used a stolen credit card to bond him out.

The jury could reasonably infer from this non-accomplice testimony of Barrera, Dunlap, and Ballinger that appellant knew of Ballinger's illegal activities by the end of October 2014, which also tends to connect appellant with the offense.

### III. Conclusion

In sum, the jury received non-accomplice evidence that (1) appellant was present in a vehicle with Ligori, Ballinger, and a bag of stolen identifying

10

information; (2) the crowbar used in the break-ins was found at appellant's feet in the car; (3) appellant provided a false name and date of birth to Officer Gothard; (4) appellant's personal documents were mixed in with the stolen identifying information; and (5) appellant was questioned by Investigator Dunlap regarding stolen identifying information that Ballinger had in her possession less than one month before appellant's second arrest. Therefore, after eliminating the accomplice testimony from our consideration and examining the non-accomplice evidence in the light most favorable to the verdict, we conclude rational jurors could find that the non-accomplice evidence tends to connect appellant to the offense.

Accordingly, we overrule appellant's sole issue, and affirm the trial court's judgment.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Christopher, Brown, and Wise.
Do Not Publish—Tex. R. App. P. 47.2(b).