In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-04-00784-CR
____________

JUAN ANTONIO PENA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No.0939833 




MEMORANDUM OPINION
          Appellant, Juan Antonio Pena, was indicted for the felony offense of capital
murder. It was alleged that, during the course of committing or attempting to
commit robbery, he intentionally caused the death of Christopher Harrell. 
Appellant pleaded not guilty, but a jury found him guilty of capital murder. 
Because the State did not seek the death penalty, the trial court assessed
punishment at confinement for life in prison, the only alternative sentence for
capital murder. In his first point of error, appellant contends that the evidence is
legally insufficient to support his conviction because the non-accomplice evidence
was insufficient to corroborate the accomplice-witness testimony. Appellant’s
remaining six points of error assert that the trial court erred by (1) refusing to give
any accomplice-witness jury instruction for two of the State’s witnesses, Antonio
Tunal and Petra Cortina, (2) refusing to give an instruction to the jury that Ramon
Villareal was an accomplice “as a matter of law,” (3) admitting hearsay testimony,
and (4) allowing improper jury argument by the State’s attorney. We affirm.
Factual Background
          Approximately twice a month, Armando Hernandez sold crack cocaine to
Harrell for cash. In January 2003, Hernandez and Villareal drove to Harrell’s
house in northeast Harris County to deliver crack cocaine to Harrell. Villareal
waited in his car while Hernandez entered the residence to deliver the narcotics. 
As they drove from the residence, Hernandez told Villareal that he wanted to rob
Harrell to steal his gun collection, which consisted of rifles, handguns, and
AR15’s. Villareal agreed to participate in the robbery, when he and Hernandez
initially discussed the plan and in later discussions, and continued to agree to
participate, even after Hernandez informed Villareal that they would have to kill
Harrell during the course of the robbery because Harrell knew Hernandez’s family. 
          On January 29, 2003, Villareal told Hernandez that he would not participate
in the robbery because everyone in their neighborhood was aware of the plan, and
he was afraid of getting caught. Villareal suggested that Hernandez contact
appellant, who lived next door and whom Villareal believed would be willing to
participate in the offense. 
          That afternoon, Hernandez repeatedly telephoned Michael Salazar to request
that Salazar give him a ride to buy a gun. Salazar agreed to give Hernandez a ride
and picked up both Hernandez and appellant in his car. Salazar was surprised to
find appellant with Hernandez because Hernandez had not mentioned, in his earlier
telephone calls, that appellant would be accompanying them, and because
Hernandez and appellant did not usually socialize together. At approximately
7 p.m., while the three men were in the car, Hernandez told Salazar that, instead of
buying a gun, he was going to beat up the man who owned the guns and take a gun
from him. When Salazar was told of the plans to steal the guns with the use of
force, he formed the belief that appellant was present to assist Hernandez by
intimidating people during the robbery of the gun. 
          When the three men arrived at Harrell’s residence, Salazar initially parked
his car on the street, but Harrell, who was sitting inside the garage, told him to park
in the driveway of the house. Appellant, Hernandez, and Harrell then entered the
residence, while Salazar waited in his car, where he was talking on his cellular
telephone. After 15 to 20 minutes, Hernandez and appellant came out of the house. 
They were carrying several guns that were wrapped in dark clothing and a small
laundry basket filled with various items, which they loaded into Salazar’s car. 
Salazar drove Hernandez and appellant from the residence to the San Jacinto
bridge, where Hernandez discarded his small, black semi-automatic firearm. When
Salazar inquired why Hernandez had thrown out the gun, Hernandez responded
that he had shot Harrell and believed him to be dead.
          At approximately 9 p.m., Hernandez telephoned Antonio Tunal’s residence
and gave instructions to Tunal’s wife to turn off the porch light to the house. 
When the three men arrived at the Tunal residence, Hernandez asked Tunal if he
could store some rifles at the house, and Tunal agreed. Tunal provided Hernandez
with a baseball bag into which the stolen guns were loaded. That bag, flashlights, a
G. Loomis fishing rod, a small laundry basket containing boxes of bullets, gun
cleaning tools, pistol holders, cellular telephone chargers, keys, and guns were
taken into the house by appellant and Hernandez. Appellant looked inside a wallet
that was also brought into the house. Approximately 20 minutes after they arrived,
Hernandez, Salazar, and appellant left the Tunal residence, taking with them all of
the items that had been brought into the house, except the rifles, ammunition, and
the G. Loomis fishing pole. Tunal acknowledged that he knew that he was taking
possession of stolen property, but said that he believed the stolen items came from
a residential burglary. 
          After leaving the Tunal residence, Salazar drove appellant and Hernandez to
Petra Cortina’s residence, where Salazar and appellant burned clothes in a barrel in
the yard. Cortina agreed to help Hernandez sell the guns and telephoned an
acquaintance, Alou Perez, who was interested in buying them. 
          The day after the capital murder, Cortina and Hernandez went to retrieve the
guns that had been left at the Tunal residence to deliver the guns to Perez. 
Hernandez went into the Tunal house and spoke to Tunal, but Cortina waited
outside in the car. Hernandez told Tunal that “he had pulled a lick,” and that he
had sold the guns for $1,900 and “some work.” Tunal interpreted Hernandez’s
comments as meaning that Hernandez had stolen property and had sold the guns
for money and illegal narcotics. 
          Perez purchased the guns from Hernandez and Cortina for $1,000 and an
ounce of cocaine. Birdie, a friend of Perez, purchased a silver pistol from
Hernandez and Cortina for $150. Hernandez gave Cortina a quarter of an ounce of
cocaine, worth approximately $125, for her assistance in selling the guns.
          When Hernandez and Cortina returned to Cortina’s residence, appellant was
waiting inside her house. He was angry that it was taking so long to get the money
and told Hernandez that he wanted his money. Instead, Hernandez gave appellant
half an ounce of crack cocaine. Appellant told Hernandez and Cortina that he
would kill them if any information about the incident “got out.”
          That same day, January 30, Harrell’s parents discovered his body inside his
house. Harrell had been shot twice: once beneath his right eye and once on the left
side of his forehead. Harrell also sustained a blunt force injury to his ear. Three
shell casings for a .380 caliber gun were near Harrell’s body. 
          A search of Harrell’s house revealed that the gun safe in the house was open
and empty, and that the dresser drawers in the master bedroom had been pulled out. 
A small amount of marihuana and a device to smoke illegal narcotics were
recovered inside the kitchen. Fingerprints lifted from Harrell’s bathroom counter
matched Hernandez’s fingerprints. Other physical evidence showed that the tire
impressions left at Harrell’s residence were consistent with tread of the tires from
Salazar’s automobile. Cellular telephone records showed multiple phone calls
between Hernandez and Harrell on the day Harrell was killed, and calls between
Hernandez and appellant’s mother’s residence on the day of the capital murder.           The telephone records also led officers to Salazar. Although he initially
denied knowledge of the incident when questioned by police officers and then
minimized his knowledge of the offense, Salazar later told police officers that he
was aware of the plan to rob Harrell, that appellant was involved in the offense,
and that property stolen from Harrell was left at Tunal’s residence. Salazar also
showed police officers where Hernandez had thrown his gun out of Salazar’s car at
the San Jacinto bridge, but a search of that location by police officers did not result
in the recovery of the gun. Salazar identified appellant from a photospread as the
person that he called “Nano,” who had committed the acts he described to the
police officers. 
          Police officers executed a search warrant at Tunal’s residence and recovered
the G. Loomis fishing pole, .380 caliber ammunition, and marihuana. A flashlight
believed to belong to Harrell was also recovered from Tunal’s place of business. 
Tunal identified appellant from a photospread as one of the men who brought guns
into his residence on the night of the offense. From a photograph of Cortina, Tunal
identified her as the woman who arrived at his residence with Hernandez to pick up
the guns. Cortina initially denied knowledge of the incident to police officers, but
later acknowledged her role in selling the guns after the offense. For their
respective roles in the robbery and murder of Harrell, Hernandez and appellant
were charged with capital murder, and Salazar was charged with the lesser offense
of first-degree, aggravated robbery.
          Salazar, Cortina, and Tunal each testified for the State at appellant’s trial,
and the jury learned of the criminal charges against them and of the benefits each
received in exchange for their trial testimony. Salazar’s cooperation with the
prosecution allowed for a lowered bond and a sentencing recommendation that he
receive a punishment sentence of confinement for between five and 30 years in
prison. Cortina received a plea-bargained punishment of five years’ community
supervision, with 180 days in jail, as well as other conditions of community service
for the first-degree felony charge of possession of a controlled substance, and a
dismissal of a state-jail felony charge of possession of a controlled substance. 
Tunal, who was prosecuted for a fourth-degree, state-jail charge for possession of
the marihuana recovered inside his residence when the search warrant was
executed, was sentenced to 120 days in jail. The record shows that he did not
receive any offers of benefit from the State for his testimony in this case. The trial
court’s charge to the jury instructed that Salazar was an accomplice as a matter of
law, but gave no accomplice-witness instructions concerning either Tunal or
Cortina. 
          Villareal, who was not charged with any criminal offense related to Harrell’s
robbery and murder, also testified for the State at appellant’s trial. The charge to
the jury instructed the jurors to determine whether Villareal was an accomplice
under the facts; the jury was not instructed that Villareal was an accomplice as a
matter of law. 
          The testimony from Salazar, who was an accomplice as a matter of law, and
Villareal, whom the jury could have determined was an accomplice as a matter of
fact, established the following: (1) Villareal gave Hernandez appellant’s name as a
person who would be interested in committing the offense; (2) Salazar took
appellant and Hernandez to Harrell’s residence to commit a robbery; (3) appellant
and Hernandez entered Harrell’s residence together with Harrell; (4) appellant and
Hernandez carried items from Harrell’s residence; (5) appellant was in the car with
Hernandez when Hernandez discarded a firearm into the San Jacinto river and
when Hernandez admitted shooting and killing Harrell; (6) appellant, Hernandez,
and Salazar took the items stolen from Harrell’s house to Tunal’s house where they
examined them; (7) appellant, Hernandez, and Salazar left a few of the stolen items
at Tunal’s house, but took the rest of the items with them; and (8) appellant,
Hernandez, and Salazar burned clothes and other items at Cortina’s house.
Accomplice-Witness Jury Instructions 
          In his second, third, and fourth points of error, appellant contends that the
trial court erred by refusing to instruct the jury that Villareal was an accomplice
witness as a matter of law and by refusing to give accomplice-witness jury
instructions concerning the testimony of Cortina and Tunal.
          Article 38.14 of the Code of Criminal Procedure provides that “[a]
conviction cannot be had upon the testimony of an accomplice unless corroborated
by other evidence tending to connect the defendant with the offense committed;
and the corroboration is not sufficient if it merely shows the commission of the
offense.” Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Blake v. State,
971 S.W.2d 451, 454 (Tex. Crim. App. 1998). 
          A trial court can give two types of accomplice-witness jury instructions. 
The accomplice “as a matter of law” charge instructs the jury that the witness is an
accomplice as a matter of law and that the jury cannot convict upon the testimony
of that witness unless his testimony is corroborated with non-accomplice evidence
that tends to connect the defendant with the offense. See Blake, 971 S.W.2d at 454. 
The accomplice “as a matter of fact” charge, however, instructs the jury to
determine whether, under the facts of the case, the witness is an accomplice, as
defined by the court. The instruction further states that, if the jury determines that
the witness is an accomplice, then the jury cannot convict, unless the testimony of
that witness is corroborated with non-accomplice evidence that tends to connect
the defendant with the offense. See id. at 455. Upon a defendant’s request for an
accomplice charge concerning the testimony of a witness for the State, therefore, a
trial court must determine whether to give a matter of law instruction, a matter of
fact instruction, or no accomplice-witness instruction. See id. 
          An accomplice as a matter of law instruction should be included in the jury
charge when no doubt exists, or the evidence clearly shows, that a witness is an
accomplice witness as a matter of law; i.e., the witness is a person who is
susceptible to prosecution for either the offense for which the accused is charged or
for a lesser included offense. See id. at 454-55; Paredes v. State, 129 S.W.3d 530,
536 (Tex. Crim. App. 2004).
          An accomplice as a matter of fact instruction should be included in the jury
charge when the evidence raises a fact question concerning whether the witness is
an accomplice; i.e., evidence presented by the parties is conflicting, and it is not
clear whether the witness is an accomplice. Blake, 971 S.W.2d at 454. An
accomplice witness as a matter of fact instruction is appropriate when some doubt
exists that a witness is an accomplice witness as a matter of law, “even though the
evidence appears to preponderate in favor of the conclusion that the witness is an
accomplice witness as a matter of law.” See Gamez v. State, 737 S.W.2d 315, 322
(Tex. Crim. App. 1987); Van Buskirk v. State, 492 S.W.2d 279, 281 (Tex. Crim.
App. 1973). An accomplice witness as a matter of fact instruction should also be
given when a witness’s testimony shows his participation in an offense, but also
includes exculpatory assertions. See Marlo v. State, 720 S.W.2d 496, 500-01 (Tex.
Crim. App. 1986).
          In determining whether a person is an accomplice, the test is not whether the
witness is actually charged and prosecuted for his participation. Blake, 971 S.W.2d
at 455. Rather, the record should be examined for evidence that would support a
charge against the witness alleged to be an accomplice. Id. An accomplice is a
person who participates before, during, or after the commission of the crime, under
circumstances that show that he is connected to the criminal offense as a
blameworthy participant. See id. at 454. A person may be criminally responsible
for his own conduct and for another person’s conduct when the person acts (1)
“with intent to promote or assist the commission of the offense,” and (2) “solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.” See Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). 
          A person is not an accomplice if he is merely present at the scene of the
offense. See Blake, 971 S.W.2d at 454. Additionally, a person is not an
accomplice if he agrees to participate in the commission of the offense, but later
does not, as long as no circumstances show the person’s affirmative act or criminal
omission in furtherance of the offense. See Ferguson v. State, 573 S.W.2d 516,
523 (Tex. Crim. App. 1978); Bacey v. State, 990 S.W.2d 319, 327 (Tex.
App.—Texarkana 1999, no pet.). A person is not an accomplice if he knows about
a crime and fails to disclose it, or even if he conceals it. Blake, 971 S.W.2d at 454. 
Moreover, a person is not an accomplice if he commits other crimes with the
accused, as long as there is no showing that the witness participated in the offense
at issue. See Kunkle v. State, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986).
Antonio Tunal
          The trial court refused to give the jury any accomplice-witness instruction
concerning Tunal. Appellant contends that Tunal was an accomplice witness
because he testified as follows: (1) Tunal often socialized with Hernandez, (2) on
the night of the capital murder, Salazar, Hernandez, and appellant brought items
stolen from Harrell’s residence into Tunal’s residence, and some of those items
were recovered by police officers when the search warrant was executed, (3) Tunal
knew that Hernandez had instructed Tunal’s wife to turn off the porch light of
Tunal’s residence before Hernandez arrived there, and (4) Tunal testified that he
believed the men “broke in a house or something.” Appellant also asserts that a
police officer referred to Tunal as a suspect in the capital murder of Harrell. 
Appellant further contends that, because the State’s attorney represented to the trial
court that statements by Hernandez to Tunal were admissible as coconspirator
statements, the State should be estopped from asserting on appeal that Tunal was
not a coconspirator in the capital murder.
          The record shows only that Tunal was guilty of receiving property stolen
from Harrell. See Tex. Pen. Code Ann. § 31.02 (Vernon 2003) (stating that
receiving or concealing stolen property constitutes theft). No evidence in the
record shows that Tunal knew that anyone was physically harmed when the
property was stolen.


 No evidence in the record shows that Tunal participated in
the robbery of Harrell or his murder, either before, during, or after the commission
of the offense.


 Without evidence showing that Tunal did more than merely
receive property stolen from Harrell, therefore, the trial court did not err by
refusing to include an accomplice-witness instruction in the jury charge. See
Kunkle, 771 S.W.2d at 439 (“[C]omplicity with an accused in the commission of
another offense does not make that witness’[s] testimony that of an accomplice
witness for the offense for which the accused is on trial if there is no showing of
the witness’[s] complicity in that offense.”). 
          Without citation to any authority, appellant contends that the State should be
estopped from claiming, on appeal, that Tunal was not an accomplice. Appellant
contends that the State represented to the trial court that Tunal and Hernandez were
coconspirators when it argued to the trial court that Hernandez’s hearsay
statements were admissible under the coconspirator statement exception to the
hearsay rule.


 
          The record supports appellant’s contention that the State portrayed Tunal as
a coconspirator of Hernandez when it argued that Hernandez’s hearsay statements
were admissible through Tunal’s testimony. The State’s arguments to the trial
court however, never specified what crime Hernandez and Tunal conspired to
commit. The State never asserted to the trial court that Hernandez and Tunal
conspired to commit the robbery or murder of Harrell, and, as previously
discussed, nothing in the record supports that assertion. Even if we were to
conclude that the law of estoppel applied, we cannot conclude that, by merely
generally referring to Hernandez and Tunal as coconspirators, the State represented
to the trial court that they were coconspirators in the robbery or murder of Harrell,
rather than simply coconspirators in the disposition of property stolen from Harrell. 
Because the State’s arguments to the trial court were not sufficiently specific to be
inconsistent with the State’s arguments to this court on appeal, we hold that the
trial court did not err by refusing to include an accomplice-witness instruction
concerning Tunal in the jury charge. 
          We overrule appellant’s second point of error.
Petra Cortina
          The trial court also refused to give the jury any accomplice-witness
instruction concerning Cortina. Appellant contends that Cortina was an
accomplice witness because she testified as follows: (1) she was present when
appellant and Salazar destroyed clothes and a basket outside her house following
the murder, (2) she helped Hernandez sell the weapons taken during the capital
murder, (3) she knew Salazar, Hernandez, and appellant from her neighborhood,
(4) she acknowledged lying to police officers about her knowledge of the offense,
(5) she said that when she sold the guns to her friends, she did not know that they
were stolen, and (6) she said that appellant threatened to kill her “if any of this got
out.”
          The record shows, at most, that Cortina was guilty only of receiving and
selling property stolen from Harrell. See Tex. Pen. Code Ann. § 31.02 (Vernon
2003). Although the record shows that appellant and Hernandez burned clothes at
Cortina’s house on the night of the capital murder of Harrell, no evidence in the
record shows that Cortina knew that anyone had been physically harmed when the
property was stolen, and Cortina claimed that she did not know that the guns were
stolen when she participated in selling them.


 Because no evidence in the record
shows that Cortina was a participant in the robbery or murder of Harrell, either
before, during, or after the commission of the offense, we hold that the trial court
did not err by refusing to give the jury an accomplice-witness instruction
concerning Cortina. 
          We overrule appellant’s third point of error.
Ramon Villareal
          The trial court included in the jury charge an accomplice as a matter of fact
instruction regarding Villareal, but refused appellant’s request to instruct the jury
that Villareal was an accomplice as a matter of law. Appellant contends that the
evidence shows that Villarreal was an accomplice as a matter of law because
Villareal testified that (1) after agreeing to participate with Hernandez in the
robbery of Harrell, he continued to agree to help Hernandez, even after Hernandez
told him that Harrell would have to be killed, (2) he withdrew from the plan to rob
and kill Harrell on the day of the offense, and (3) he suggested that Hernandez ask
appellant to take part in the crime.
          The record shows that Villareal testified that he agreed to participate with
Hernandez in the robbery and murder of Harrell, but that Villareal withdrew from
the plan on the day of the offense. At the point when Villareal withdrew from the
agreement to rob and kill Harrell, Villareal had not committed an affirmative act in
furtherance of the conspiracy to kill Harrell. See Blake, 971 S.W.2d at 454
(stating that an affirmative act or omission is required for person to be 
accomplice.) But, the agreement to commit the crime does not, by itself, constitute
an affirmative act. See Ferguson, 573 S.W.2d at 523; Bacey, 990 S.W.2d at 327. 
Therefore, Villareal’s agreement to commit the offense was insufficient to make
him an accomplice.
          Appellant also contends that Villareal became an accomplice as a matter of
law because he suggested that Hernandez contact appellant about whether he was
interested in taking part in the offense. Suggesting appellant’s name as a person
who could help in the commission of the offense could constitute evidence of
Villareal’s actions to encourage, aid, or attempt to aid Hernandez in the
commission of the robbery and murder of Harrell. See Tex. Pen. Code Ann. §
7.02(a)(2) (Vernon 2003). The record, however, contains inconsistent evidence
concerning whether Villareal gave Hernandez appellant’s name while acting “with
intent to promote or assist the commission of the offense.” See id. 
          The record shows that, during his trial testimony, Villareal said that he
suggested that Hernandez ask appellant to take part in the offense. The record also
shows, however, that Villareal clearly stated that he did not wish to participate in
or play any role in the robbery or murder of Harrell. Villareal told Hernandez, “I’m
out, I’m not going to take part in this killing and taking these guns, go ask
[appellant].” Villareal further testified that he did not participate in the offense
himself because he did not think that the prospect of killing someone for his guns
was “right.” Moreover, Villareal was impeached with statements he had made
earlier to police officers in which he denied that he ever suggested appellant’s
name to Hernandez. 
          Because the evidence of whether Villareal acted with intent to promote or
assist the robbery or murder of Harrell is conflicting and unclear, the trial court
properly submitted an accomplice as a matter of fact instruction to the jury as to
Villareal and not an accomplice as a matter of law instruction. See Paredes, 129
S.W.3d at 536; Mize v. State, 915 S.W.2d 891, 895-96 (Tex. App.—Houston [1st
Dist.] 1995), pet. ref’d, 922 S.W.2d 175 (Tex. Crim. App. 1996) (holding that
evidence did not demonstrate witness’s intent to commit theft as matter of law but
conflicting evidence on intent did raise fact issue for jury). We hold that the trial
court did not err by refusing to instruct the jury that Villareal was an accomplice as
a matter of law. 
          We overrule appellant’s fourth point of error.
Sufficiency of Evidence Corroborating Accomplice-Witness Testimony
          In his first issue, appellant contends that the evidence is insufficient to
support his conviction because the State failed to corroborate the accomplice-witness testimony of Michael Salazar, who was an accomplice as a matter of law,
and Ramon Villareal, whom the jury was instructed to determine whether he was
an accomplice under the facts shown. We cannot know whether the jury
determined that Villareal was an accomplice under the facts shown, but will
assume that he was an accomplice for purposes of this analysis of the sufficiency
of the evidence. Although appellant contends that Tunal and Cortina were also
accomplices, we have already determined that they were not, for the reasons
previously stated. 
          To be sufficient to sustain a conviction, accomplice-witness testimony must
be corroborated by other evidence that tends to connect the defendant with the
offense committed. Tex. Code Crim. Proc. Ann. art. 38.14. The corroboration is
not sufficient if it merely shows the commission of the offense. Id. The
accomplice-witness rule is a statutorily imposed sufficiency standard that requires
that non-accomplice evidence tend to connect the defendant with the offense; the
rule is not derived from the state or federal constitutional principles that otherwise
govern legal and factual sufficiency review. Cathey v. State, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999). 
          To test the sufficiency of corroborative evidence, we eliminate the testimony
of the accomplice witnesses from consideration and then examine the testimony of
other witnesses to ascertain whether the non-accomplice evidence tends to connect
the accused with the commission of the offense. Hernandez v. State, 939 S.W.2d
173, 176 (Tex. Crim. App. 1997); Reed v. State, 744 S.W.2d 112, 125 (Tex. Crim.
App. 1988); St. Julian v. State, 132 S.W.3d 512, 516 (Tex. App.—Houston [1st
Dist.] 2004, pet. ref’d). The non-accomplice evidence need not be sufficient, by
itself to establish the accused’s guilt beyond a reasonable doubt. Hernandez, 939
S.W.2d at 176; St. Julian, 132 S.W.3d at 516. And the non-accomplice evidence
need not directly link the defendant to the commission of the crime. Hernandez,
939 S.W.2d at 176; Reynolds v. State, 489 S.W.2d 866, 872 (Tex. Crim. App.
1972). All the law requires is that some non-accomplice evidence tends to connect
the accused to the commission of the offense. Hernandez, 939 S.W.2d at 176
(emphasis in original); St. Julian, 132 S.W.3d at 516. Thus, incriminating
circumstances that are seemingly insignificant may be sufficient, corroborative
evidence to satisfy the accomplice-witness rule. Dowthitt v. State, 931 S.W.2d
244, 249 (Tex. Crim. App. 1996); Munoz v. State, 853 S.W.2d 558, 559 (Tex.
Crim. App. 1993). 
          In evaluating the sufficiency of the corroboration, we consider each case on
its own facts and circumstances and look to all facts as furnishing the
corroboration. See Munoz, 853 S.W.2d at 559. While these circumstances might
not be sufficient individually to corroborate the accomplice’s testimony, taken
together, rational jurors could conclude that this evidence sufficiently tended to
connect the defendant to the offense. Hernandez, 939 S.W.2d at 178-79; see also
Cox v. State, 830 S.W.2d 609, 612 (Tex. Crim. App. 1992) (holding that evidence
of other suspicious circumstances filled sufficiency gap arising from evidence of
appellant’s mere presence at scene of offense). Evidence that the defendant was in
the company of the accomplice at or near the time or place of a crime is proper
corroborating evidence to support a conviction. Hernandez, 939 S.W.2d at 178;
see Jackson v. State, 745 S.W.2d 4, 13 (Tex. Crim. App. 1988) (presence in
company of accomplice near time of offense not alone conclusive, but important
factor for corroboration).
          The non-accomplice evidence that tends to connect appellant with the capital
murder of Harrell shows as follows: (1) Tunal testified that, on the night of the
offense, appellant, Hernandez, and Salazar came to his residence with guns and
other property, including the G. Loomis fishing pole later seized at Tunal’s
residence, which Tunal believed had been stolen; (2) Police officers recovered the
G. Loomis fishing pole while executing the search warrant at Tunal’s house. At
trial, Harrell’s father identified the custom made fishing pole as Harrell’s. 
Additionally, although the flashlight that was recovered from Tunal’s place of
business was not specifically identified as belonging to Harrell, an empty case for
the same type of flashlight was found at Harrell’s residence; (3) Cortina testified
that she observed appellant, Hernandez, and Salazar burning clothes and a basket
on the night of the offense; (4) Cortina testified that appellant told Hernandez that
he wanted his money after Hernandez sold the stolen guns to Perez and Birdie; (5)
Cortina testified that appellant threatened to kill her and Hernandez if they told
anyone what they knew; and (6) Cortina gave police officers the address where
they could find the gun that she and Hernandez had sold. Upon researching the
address given to them by Cortina, the police found that a recent arrest had been
made at that address, and that a Smith and Wesson .357 revolver had been
recovered there. The serial number for the .357 revolver recovered from the house
where Cortina led the police matched the serial number on a receipt given to
Harrell when he purchased the gun from a friend.
          Under these circumstances, the non-accomplice evidence sufficiently tends
to connect appellant to the offense. See Gill v. State, 873 S.W.2d 45, 48-49 (Tex.
Crim. App. 1994) (holding that non-accomplice evidence, which showed that
robbery occurred, that Gill had the opportunity to commit robbery, that Gill and his
accomplice acted secretively shortly after commission of offense, and that Gill and
his accomplice possessed items taken in robbery was sufficient to corroborate
accomplice-witness testimony). We hold that the non-accomplice evidence
sufficiently corroborated the accomplice-witness testimony. 
          We overrule appellant’s first point of error. 
Hearsay StatementsIn his fifth point of error, appellant contends that the trial court abused its
discretion by admitting, over appellant’s objection, hearsay statements by
Hernandez to Villareal, Salazar, and Tunal. Appellant argues that the trial court
erred by (1) allowing Villareal to testify that Hernandez recruited Villareal to rob
and kill Harrell; (2) allowing Salazar to testify that Hernandez asked Salazar for a
ride to buy a gun and then changed the request to needing a ride to take the gun
with the use of force; (3) allowing Salazar to report Hernandez’s statement that he
had shot the gun owner and believed him to be dead; and (4) allowing Tunal to
testify that Hernandez told Tunal that he got the guns by “pulling a lick” when
“they went inside, took care of business,” and that those statements caused Tunal
to form the impression that Hernandez had stolen the guns. The State contends
that Hernandez’s statements to Villareal and Salazar were admissible as statements
made to coconspirators in furtherance of a conspiracy, and that the statements to
Tunal were admissible as statements against penal interest. 
          We review a trial court’s ruling to admit or exclude evidence for abuse of
discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). 
Coconspirator statements are not hearsay and are not subject to the exclusionary
rule. See Tex. R. Evid. 801(e)(2)(E). The admissibility of an out-of-court
statement under an exception to the general hearsay exclusion rule is within the
trial court’s discretion. See Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App.
2003); Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995). Therefore, a
reviewing court should not reverse unless a clear abuse of discretion is shown. 
Zuliani, 97 S.W.3d at 595; Coffin v. State, 885 S.W.2d 140, 153 (Tex. Crim. App.
1994). For hearsay to be admissible, it must fit an exception provided by a statute
or the Rules of Evidence. Tex. R. Evid. 802. 
Coconspirator Statements
          An out-of-court statement offered to prove the truth of the matter asserted is
not hearsay if it is (1) offered against a party and is (2) a statement made by a
coconspirator during the course of, and in furtherance of, the conspiracy. See Tex.
R. Evid. 801(e)(2)(E); Crum v. State, 946 S.W.2d 349, 363 (Tex. App.—Houston
[14th Dist.] 1997, pet. ref’d). A conspiracy exists when two or more persons, as
shown by words or deed, agree to do an unlawful act. Crum, 946 S.W.2d at 363;
Butler v. State, 758 S.W.2d 856, 860 (Tex. App.—Houston [14th Dist.] 1988, no
pet.).
          To satisfy the coconspirator exception to the hearsay rule, the State must
show that (1) at the time the statements was made, the alleged coconspirator was
participating in a conspiracy in which the defendant also participated or later joined
and (2) the statement was made in furtherance of the conspiracy. Ward v. State,
657 S.W.2d 133, 136-37 (Tex. Crim. App. 1983); Peoples v. State, 928 S.W.2d
112, 116 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d). Statements made in
furtherance of a conspiracy include those made (1) with intent to induce another to
deal with coconspirators or in any other way to cooperate with or assist
coconspirators, (2) with intent to induce another to join the conspiracy, (3) in
formulating future strategies of concealment to benefit the conspiracy, (4) with
intent to induce continued involvement in the conspiracy, or (5) to identify the role
of one conspirator to another. Crum, 946 S.W.2d at 363. Conversely, statements
that are not in furtherance of a conspiracy, and thus remain hearsay, include those
that are (1) casual admissions of culpability to someone the declarant had
individually decided to trust, (2) mere narrative descriptions, (3) mere
conversations between conspirators, or (4) “puffing” or “boasts” by coconspirators. 
Id.
          Appellant asserts that the trial court erred by allowing Villareal to testify that
Hernandez recruited Villareal to rob and kill Harrell. The record shows that,
although Villareal later withdrew from the conspiracy, there was a period of time
in which Hernandez and Villareal had an agreement to rob and kill Harrell. 
Hernandez’s statements to Villareal were made during the course of their
discussions to commit the offense together, and to further the purpose of the
conspiracy to rob and kill Harrell. See id. (stating that statements made with intent
to induce another to join conspiracy are admissible as non-hearsay under
coconspirator exception to hearsay rule). We cannot conclude that the trial court
abused its discretion by allowing Villareal to testify that Hernandez recruited
Villareal to rob and kill Harrell. 
          Appellant further contends that the trial court erred by allowing Salazar to
testify (1) that Hernandez asked him for a ride to buy a gun and then changed the
request to needing a ride to take the gun with the use of force, and (2) that
Hernandez stated that he had shot the gun owner and believed him to be dead. The
record shows that Salazar and Hernandez were coconspirators in the robbery of
Harrell, and that Salazar drove Hernandez and appellant to and from Harrell’s
house and other places to dispose of property stolen from Harrell. The statement
that Hernandez needed a ride so that he could take the gun with the use of force
furthered the conspiracy by informing Salazar of the events that were to transpire
at Harrell’s house after Salazar drove them there. See id. (stating that statements
made in furtherance of conspiracy include those made with intent to induce another
to deal with coconspirators or in any other way to cooperate with or assist
coconspirators). Additionally, Hernandez’s statement to Salazar, that he believed
he had killed Harrell, was made after Salazar drove Hernandez to the bridge where
he disposed of the gun, but before Salazar and Hernandez disposed of property
stolen from Harrell’s house. The trial court acted within its discretion by implicitly
finding that the statement was made with intent to induce continued involvement in
the conspiracy. See id. We hold that the trial court did not abuse its discretion by
admitting Hernandez’s statements recounted by Villareal and Salazar as non-hearsay statements by a coconspirator. 
Statements Against Penal Interest
          Appellant contends that the trial court erred by allowing Tunal to testify that
Hernandez told Tunal that he got the guns by “pulling a lick” when “they went
inside, took care of business” and that those statements caused Tunal to form the
impression that Hernandez had stolen the guns. The trial court ruled that this
instance of hearsay was admissible as a statement against Hernandez’s penal
interest. See Tex. R. Evid. 803(24).
          The following is not excluded by the hearsay rule, even if the declarant is
available as a witness:
Statement against interest. A statement which was at the time of its
making so far contrary to the declarant’s pecuniary or proprietary
interest, or so far tended to subject [him] to civil or criminal liability,
or to render invalid a claim by [him] against another, or to make [him]
an object of hatred, ridicule, or disgrace, that a reasonable person in
declarant’s position would not have made the statement unless
believing it to be true. . . [A] statement tending to expose the
declarant to criminal liability is not admissible unless corroborating
circumstances clearly indicate the trustworthiness of the statement. 
 
Tex. R. Evid. 803(24) (emphasis added). Determining the admissibility of a
statement in accordance with rule 803(24) requires a two-step inquiry. Bingham v.
State, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999). If both criteria are met, rule
803(24) is satisfied. Id. 
          The trial court must first determine whether the statement in question tends
to expose the declarant to criminal liability. Id.; see Williamson v. United States,
512 U.S. 594, 599-601, 114 S. Ct. 2431, 2435 (1994); Cofield v. State, 891 S.W.2d
952, 955 (Tex. Crim. App. 1994). Second, the trial court must determine, by
considering a number of factors, whether there are corroborating circumstances
that clearly indicate the trustworthiness of the statement. See Tex. R. Evid.
803(24); Woods v. State, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004); Bingham,
987 S.W.2d at 57. The factors may include the following: (1) whether the guilt of
the declarant is inconsistent with the guilt of the accused; (2) whether the declarant
was so situated that he might have committed the crime; (3) the timing of the
declaration and its spontaneity; (4) the party to whom the declaration was made;
and (5) the existence of independent, corroborating facts. Cunningham v. State,
877 S.W.2d 310, 312 (Tex. Crim. App. 1994); Davis v. State, 872 S.W.2d 743, 749
(Tex. Crim. App. 1994).
          Under the first prong, Hernandez was potentially exposed to criminal
liability by stating that he had stolen the property by “pulling a lick,” entering the
residence, and taking care “of business.” Applying the five rule 803(24) factors to
the statements made by Hernandez to Tunal under the second prong indicates that
the statements were admissible. Tunal’s guilt for his role in storing the stolen
property was not inconsistent with Hernandez’s role in the robbery and murder of
Harrell. Nothing in the record suggests that Tunal was a party to or committed the
offense. The admission by Hernandez was made on the day following the offense
and was related to Hernandez’s explanation of his decision to pick up the stolen
items that he had left at the Tunal residence on the night of the robbery and
murder. Tunal and Hernandez apparently had a relationship in which they trusted
each other with valuable property. Finally, independent facts corroborate the
credibility of the statement. Police officers recovered stolen property that belonged
to Harrell in Tunal’s possession. Salazar also testified that Hernandez took items
from Harrell’s residence into Tunal’s residence. We hold that the trial court did
not abuse its discretion by allowing into evidence, under the rule 803(24) 
exception for statements against penal interest, statements by Hernandez that Tunal
recounted at trial. 
          We overrule appellant’s fifth point of error. 
State’s Closing ArgumentsIn his final two points of error, appellant asserts that the trial court erred by
overruling appellant’s objections to the State’s closing arguments. 
          Proper jury argument includes four areas: (1) summation of the evidence
presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to
the opposing counsel’s argument, or (4) a plea for law enforcement. Jackson v.
State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000).
          Appellant contends that the State attorney’s suggestion, that Salazar’s
testimony was corroborated by physical evidence of his tire impressions at the
scene of the crime, was a misstatement of the law concerning corroboration. 
Appellant’s counsel objected to the following:
But, if you want to dig a little deeper, which your charge tells you you
should because you need corroboration, at least of Michael Salazar’s
testimony, then you look at the physical evidence. Michael says
things like, “I pulled into the driveway.” You know what, he’s not
lying about that. There’s those tire impressions.
 
The State’s argument, that the tire tracks were physical evidence consistent with
Salazar’s testimony, properly summarized the evidence introduced in the trial. We
agree with appellant, however, that the State’s argument—that the jury could use
the tire impression to corroborate Salazar’s testimony, “which your charge tells
you you should because you need corroboration, at least of Michael Salazar’s
testimony”—impliedly misstated the law concerning corroboration. The jury
charge stated as follows: 
The witness, Michael Salazar, is an accomplice, if an offense was
committed, and you cannot convict the defendant upon his testimony
unless you further believe that there is other evidence in the case,
outside of the testimony of Michael Salazar tending to connect the
defendant with the offense committed, if you find that an offense was
committed, and the corroboration is not sufficient if it merely shows
the commission of the offense, but it must tend to connect the
defendant with its commission, and then from all of the evidence, you
must believe beyond a reasonable doubt that the defendant is guilty of
the offense charged against him. 
 
          As the charge explained, for the evidence to be legally sufficient to sustain a
conviction, the non-accomplice evidence must tend to connect the defendant with
the offense committed. See Tex. Code Crim. Proc. Ann. art. 38.14. Because the
tire impressions did not link the defendant to the offense in any way, they did not
constitute non-accomplice evidence that could be used to tend to connect the
defendant with the offense, as required by article 38.14. See id. Instead, the tire
impressions were evidence pertinent to Salazar’s credibility as a witness. 
          The State’s argument, that the jury could determine whether Salazar was
lying or not by looking to the physical evidence such as the tire tracks, was proper
because the statement was limited in scope to Salazar’s credibility as a witness. 
But, the State’s suggestion that the jury could use the tire tracks as physical
evidence to meet the corroboration requirement in the charge misstated the
accomplice-witness law under article 38.14. See id. Accordingly, the trial court
erred by overruling appellant’s objection to the prosecutor’s argument. See Cook
v. State, 540 S.W.2d 708, 710 (Tex. Crim. App. 1976) (holding that misstatement
of law is improper jury argument).
          Rule 44.2(b), which now governs reversible error in criminal cases, requires
that we disregard all error, except constitutional error, “that does not affect
[appellant’s] substantial rights.” See Tex. R. App. P. 44.2(b). Appellant does not
contend that the trial court’s error was constitutional. The Court of Criminal
Appeals has identified the three following factors as relevant for assessing the
impact of harm arising from nonconstitutional, jury-argument error under rule
44.2(b): (1) the “severity of the misconduct (the magnitude of the prejudicial effect
of the prosecutor’s remarks),” (2) the “measures adopted to cure the misconduct
(the efficacy of any cautionary instruction by the judge),” and (3) the “certainty of
conviction absent the misconduct (the strength of the evidence supporting the
conviction).” See Threadgill v. State, 146 S.W.3d 654, 666-67 (Tex. Crim. App.
2004) (citing Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)). 
          The first harm factor, the degree of misconduct, was minimal in this case. 
The State’s attorney’s argument did not expressly tell the jury that the tire
impressions were evidence that tended to connect appellant with the offense. 
Instead, it appears that the State began a statement about the corroboration
requirement in the charge, but changed the argument midstream to an argument
about the credibility of the witness. It appears that the prosecutor’s argument was a
good faith, yet mistaken, attempt to imply that, because the physical evidence of the
tire impression could be used as evidence of Salazar’s credibility, the tire
impressions could also be used to corroborate Salazar’s testimony under the charge. 
As to the second factor, the trial court gave no curative instruction because it had 
overruled appellant’s objection to the argument, and appellant did not request that
the trial court instruct the jury to disregard the comment. 
          Regarding the third factor, we conclude that the State’s argument could have
played only a slight role, if any, in the jury’s decision to convict appellant. The
comment comprised a single sentence within the prosecutor’s argument and was not
reiterated. Moreover, the prosecutor proceeded in closing argument as if the
objection had been granted and switched to discussing other forms of corroborating
physical evidence. Although the prosecutor referred again briefly to the evidence of
the tire impressions during closing argument, the prosecutor properly limited the
discussion of the tire impressions to their relation to Salazar’s credibility as a “truth
teller.” As the jury charge instructed, and as appellant’s attorney explained to the
jury during his closing statements, non-accomplice evidence must tend to connect
the defendant with the offense. The tire-impression evidence plainly did not
connect appellant to the offense, but was relevant only to Salazar’s credibility as a
witness. The record of the trial of this case shows that Salazar saw appellant enter
Harrell’s residence and then exit, carrying guns and a fishing pole belonging to
Harrell. Cortina testified that appellant threatened to kill her and Hernandez if she
told anybody what had happened, and witnesses saw appellant with Harrell’s
property and saw appellant burn his clothes on the night of the offense. 
Accordingly, although the prosecutor improperly implied that the jury could use
evidence of the tire impressions to corroborate Salazar’s testimony, we cannot say
that overruling the objection was harmful error under the record presented here.
          Appellant further contends that the State’s attorney argued outside the record
by suggesting that Villareal’s testimony was corroborated by evidence of a
telephone call between appellant and Hernandez because no such evidence existed. 
The argument of the State objected to by defense counsel is as follows:
How can we corroborate that? Well, you’ve got the phone call
between Pena [Appellant] and Hernandez. No, I can’t prove to you
that it was actually Hernandez on the phone to Pena, but isn’t that a
reasonable inference from the evidence? You know what, do you think
Pena’s mother is calling Hernandez just to chat with him? No. That’s
silly. That phone call was for them to talk about “You know what,
tonight I’m going to come by. I’ll pick you up and we are going to go
to my in-law’s and we have got Michael Salazar waiting for us.”
 
          The State’s argument was a reasonable deduction from the evidence that a
telephone call was made between Hernandez and appellant’s mother’s residence
following Villareal’s suggestion that Hernandez telephone appellant to assist in the
robbery and murder of Harrell. Although there is no direct evidence of the contents
of that conversation, the State’s argument comported with evidence admitted during
the trial, which showed that Salazar picked up Hernandez and appellant at
Hernandez’s mother-in-law’s house. We hold that the State’s argument was a
reasonable deduction from the evidence admitted at trial. 
          We overrule points of error six and seven.
Conclusion
We affirm the judgment of the trial court.
 
 
    Elsa Alcala
                                                                        Justice
 
Panel consists of Justices Taft, Alcala, and Higley.
Do not publish. Tex. R. App. P. 47.2(b)