Opinion issued April 23, 2009

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00204-CR






JERMAINE DEWITT CHANEY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 1113820






MEMORANDUM OPINION


 A jury convicted appellant, Jermaine Dewitt Chaney, of murder, (1) and assessed
his punishment at confinement for 60 years. Appellant presents six issues on appeal,
complaining that the trial court erred in admitting hearsay through the testimony of
two witnesses, the evidence supporting his conviction was legally and factually
insufficient, and he received ineffective assistance of counsel. We affirm.

Background Facts


 On March 8, 2007, Daniel Santan King, Garrett Thomas, and the complainant,
Anthony White, were together at the home where Thomas resided. King had just
purchased some crack cocaine when he left the room briefly to answer the front door. 
When he returned, he discovered that some of his cocaine was missing, and he
suspected that the complainant had taken it. He left Thomas's home and went to the
house next door. According to Thomas, King then asked Thomas to meet with him,
and, at this meeting, King asked Thomas to kill the complainant for taking the
cocaine. Thomas refused to do so and left the house.

 Several hours later, early in the morning of March 9, 2007, the complainant
arrived at the home of Thelma Leifester. Eventually, the complainant called King and
asked him for a ride home and then went to Leifester's bedroom to wait for his ride. 
After hearing a knock on the door, Leifester opened it. She asked the man at the door
if he were King, and the man replied that he was looking for the complainant. 
Leifester told the man that the complainant was in the bedroom and pointed the way. 
The man walked back to the bedroom, Leifester heard a gun shot and a thud, then the
man walked back to the front of her house, asked to be let out, and left.

 Leifester then ran to her bedroom and discovered the complainant lying face
down on the floor. Another resident at the home, Rebecca McAdams, had been in her
own bedroom when she heard, but did not see, a man enter the house and the sound
of a gunshot. McAdams left her room to find out what had happened. She saw the
complainant lying on the bedroom floor and called the police. Paramedics took the
complainant to a local hospital where he died the next day of a gunshot wound to the
head. 

 Leifester viewed several photo spreads during the police investigation of the
shooting. She finally identified appellant as the shooter. Antoinette Miller, King's
wife, also provided information to police regarding the involvement of her husband
and appellant.

 At trial, Garrett Thomas testified about the events of March 8, 2007 leading up
to the shooting, including King's suspicion that the complainant had stolen cocaine
from him and King's attempts to get Thomas to kill the complainant. Leifester
testified regarding the events that occurred in her home on the morning of March 9,
2007, and she identified appellant in court as the man who came to the door looking
for the complainant, walked back to the bedroom where the complainant was waiting
and was subsequently shot, and then left. Leifester also testified about her
involvement in the police investigation, including her having viewed several photo
spreads and identifying appellant in one of them.

 Makeba Thomas, a former cell-mate of appellant, testified that appellant told
him about the details of the shooting. Makeba Thomas stated that appellant told him
that King thought the complainant had stolen some cocaine from him. When King
found out that the complainant was at Leifester's house, he sent appellant there to kill
the complainant. Makeba Thomas testified that appellant told him that he knocked
on the door, walked back to the bedroom where the complainant was waiting and shot
him, then left the house running. On cross-examination, Makeba Thomas testified
that appellant spoke to him regarding the details of his case because appellant was
seeking unofficial legal counsel from Makeba.

 Antoinette Miller, King's wife, also testified at appellant's trial. She testified
that King told her that the complainant had stolen cocaine from him and that he sent
appellant to kill him. Miller further testified that she shared this information with
police after she had an altercation with King.

 Appellant testified on his own behalf. He testified that he never told Makeba
Thomas that he killed the complainant; rather, he gave Makeba Thomas the details
of the case against him based on the police offense report in order to seek unofficial
legal advice. He also testified that he had never seen Leifester or McAdams before
the trial began and that he did not know the complainant at all.

Admission of Hearsay


 In his third and fourth issues, appellant contends that the trial court erred by
admitting various hearsay statements.

A. Standard of Review

 We review rulings admitting evidence claimed to be hearsay for abuse of
discretion. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial
court abuses its discretion when it so deviates from applicable guidelines and
principles that the decision is considered outside the zone of reasonable disagreement. 
See id. "Hearsay" is a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of the matter
asserted. Tex. R. Evid. 801(d). Hearsay is inadmissible except as provided by statute
or rules prescribed pursuant to statutory authority. Tex. R. Evid. 802.

B. Testimony of Antoinette Miller

 In his third issue, appellant argues that the trial court erred in admitting as a
statement against appellant's penal interest Antoinette Miller's testimony that her
husband told her that he sent appellant to kill the complainant. See Tex. R. Evid.
803(24). Specifically, appellant argues that the State failed to offer appropriate
corroborating evidence as required by Rule of Evidence 803(24). See id.

 A hearsay statement against a person's interest may be properly admitted, by
exception, if the statement

 was at the time of its making so far contrary to the declarant's pecuniary
or proprietary interest, or so far tended to subject the declarant to civil
or criminal liability . . . or to make the declarant an object of hatred,
ridicule, or disgrace, that a reasonable person in declarant's position
would not have made the statement unless believing it to be true. In
criminal cases, a statement tending to expose the declarant to criminal
liability is not admissible unless corroborating circumstances clearly
indicate the trustworthiness of the statement.


Tex. R. Evid. 803(24).


 The first inquiry required by rule 803(24) is whether the statement tended to
expose the declarant to criminal liability. Davis v. State, 872 S.W.2d 743, 747 (Tex.
Crim. App. 1994). The second inquiry asks whether corroborating circumstances
clearly indicated the trustworthiness of the statement. See Tex. R. Evid. 803(24);
Woods v. State, 152 S.W.3d 105, 112 (Tex. Crim. App. 2004). A hearsay statement
is admissible under rule 803(24) if it satisfies both inquiries. Id.

 There is no definitive test by which to assess corroborating circumstances for
purposes of rule 803(24), but the burden to produce evidence that clearly indicates
trustworthiness is on the party who seeks to admit the statement, in this case, the
State. See Davis, 872 S.W.2d at 749. A number of factors can guide the trial court
in deciding whether the circumstances show that a statement is trustworthy, including
the following: (1) whether the guilt of the declarant is inconsistent with the guilt of
the defendant, (2) whether the declarant was so situated that he or she might have
committed the crime, (3) the timing of the declaration, (4) the spontaneity of the
declaration, (5) the relationship between the declarant and the party to whom the
statement was made, and (6) the existence of independent corroborating facts. 
Woods, 152 S.W.3d at 113; Dewberry v. State, 4 S.W.3d 735, 751 (Tex. Crim. App.
1999).

 We do not apply the first two factors in this case because the statement was not
one by which appellant sought to escape culpability, but one on which the State
relied. See Woods, 152 S.W.3d at 113 ("The first two factors . . . logically apply only
when the defendant is the proponent of the statement against interest that tends to
exculpate the defendant."). As to the remaining factors, the record shows that King
spontaneously made the statements to Miller, his wife, on the day after the murder. 
Thus, the timing, spontaneity, and relationship between the declarant and the party
to whom the statement was made tend to establish the reliability of the statements. 
The State also presented evidence of independent corroborative facts verifying the
reliability of King's statements in the form of Leifester's testimony that appellant
entered her house and shot the complainant and appellant's statements to Makeba
Thomas that he killed the complainant at King's request. Therefore, the trial court
did not abuse its discretion in admitting Miller's testimony.

 We overrule appellant's third issue.

C. Testimony of Garrett Thomas

 In his fourth issue, appellant contends that the trial court erred in admitting
Garrett Thomas's testimony that King asked him to kill the complainant for taking
some of King's cocaine as a statement in furtherance of a conspiracy. See Tex. R.
Evid. 801(e)(2)(E).

 At trial, Garrett Thomas testified that between 15 and 20 minutes after King
discovered that some of his cocaine had been stolen, King called him to come meet
him next door. The State asked Thomas what King said to him at that point, and,
before Thomas could answer, appellant's trial counsel objected based on hearsay. 
The State explained that it anticipated Thomas would testify that King asked him to
go kill the complainant and that he later saw King with an individual other witnesses
had placed at the scene of the murder. The State argued that these statements should
be admitted as statements made "in furtherance of the conspiracy." After more
discussion, appellant's trial counsel argued that she did not believe a conspiracy
existed, but the trial court overruled appellant's objection as to the two specific
statements the State proffered and allowed Thomas to continue testifying about his
conversation with King.

 On appeal, appellant specifically complains of Thomas's testimony that King
tried to convince him to go kill the complainant by reminding him of his own past
disagreements with the complainant and by providing a handgun and drugs. (2) 
Appellant argues that the State did not meet the requirements of admission as a
statement of a coconspirator because "appellant was not involved in a conspiracy
when [King] allegedly was recruiting Thomas as a shooter" and because "there was
no conspiracy at [the time King asked Thomas to kill the complainant] and . . . the
alleged conversation did not advance the object[ives] of the alleged conspiracy as
Garrett Thomas did not join up."

 Coconspirator statements are not hearsay and are not subject to the
exclusionary rule. See Tex. R. Evid. 801(e)(2)(E); see also Tex. R. Evid. 402
(stating general rule that "[a]ll relevant evidence is admissible"). An out-of-court
statement offered to prove the truth of the matter asserted is not hearsay if it is offered
against a party and is a statement made by a coconspirator during the course of, and
in furtherance of, the conspiracy. Tex. R. Evid. 801(e)(2)(E); Crum v. State, 946
S.W.2d 349, 363 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd). To satisfy the
coconspirator rule, the State must show that when the statements were made, the
alleged coconspirator was participating in a conspiracy in which the defendant also
participated or later joined and that the statement was made in furtherance of the
conspiracy. Peoples v. State, 928 S.W.2d 112, 116 (Tex. App.--Houston [1st Dist.]
1996, pet. ref'd). A conspiracy exists when two or more persons as shown by words
or deed agree to do an unlawful act. Crum, 946 S.W.2d at 363.

 The dispositive inquiry in this case is whether King made these statements to
Thomas "during the course . . . of the conspiracy." (3) See Tex. R. Evid. 801(e)(2)(E). 
The record does not contain any evidence that "two or more persons" had agreed to
do an unlawful act when King made these statements to Thomas. See Crum, 946
S.W.2d at 363. Rather, the record shows that King, acting on his own, had not yet
found anyone who agreed to participate with him in the murder of the complainant. 
Any conspiracy that King might have entered into with appellant did not exist until
after the statements were made. Because the statements were not made during the
conspiracy, the statements were not admissible under Rule 801(e)(2)(E).

 As the State contends, however, the statements were admissible as statements
against King's penal interest under Rule of Evidence 803(24). See Tex. R. Evid.
803(24). We uphold a trial court's ruling if it is reasonably supported by the record
and correct under any theory of law applicable to the case. Willover v. State, 70
S.W.3d 841, 845 (Tex. Crim. App. 2002). Statements against interest "must be self-inculpatory with corroborating circumstances to indicate the trustworthiness of the
statement[s]" to be admissible under Rule 803(24). Woods, 152 S.W.3d at 112.

 Here, King's statements to Thomas would tend to expose him criminal liability
because he solicited Thomas to commit a murder. (4) Furthermore, the trustworthiness
of the statements is corroborated by Miller's testimony that King later convinced
appellant to kill the complainant, by Makeba Thomas's testimony that appellant
claimed to have committed the murder at King's request, and by Leifester's testimony
that appellant entered her home and shot the complainant. Because the statements
were admissible under Rule 803(24), the trial court did not abuse its discretion by
admitting Garrett Thomas's testimony. See Zuliani, 97 S.W.3d at 595; Willover, 70
S.W.3d at 845.

 We overrule appellant's fourth issue.

Sufficiency of the Evidence

 In his first two issues, appellant contends that the evidence was legally and
factually insufficient to support his conviction for murder.

A. Legal Sufficiency

In his first issue, appellant challenges the legal sufficiency of the evidence. In
reviewing this challenge, we must view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex.
Crim. App. 2005).  The standard is the same for direct and circumstantial evidence
cases.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

In reviewing for legal sufficiency, we do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this is the function of the
trier of fact.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Instead, our duty is
to determine whether both the explicit and implicit findings of the trier of fact are
rational by viewing all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d at 422. In conducting our review, we resolve any
inconsistencies in the evidence in favor of the verdict.  Matson, 819 S.W.2d at 843.
Because the jury is in the best position to determine reliability of available testimony
and evidence, we must defer to assessments by the jury that depend on credibility
determinations. See Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). 

Under the law applicable to this case, a person commits the offense of murder
if he intentionally or knowingly causes the death of another. Tex. Penal Code Ann.
§ 19.02(b)(1) (Vernon 2003). Leifester identified appellant as the man who arrived
at her door and asked to see the complainant. Leifester testified that appellant walked
back to the bedroom where the complainant was waiting alone, that she heard a
gunshot, and that appellant then came back to the front door and asked to be let out. 
Leifester then ran to the bedroom where she found appellant lying face down. The
medical examiner testified that appellant died as the result of the gunshot wound to
his head. Other witnesses, including Rebecca McAdams, Garrett Thomas, Makeba
Thomas, and Antoinette Miller, gave testimony corroborating Leifester's account of
events. This evidence was legally sufficient to support the jury's finding that
appellant intentionally or knowingly caused the complainant's death. Accordingly,
we overrule appellant's first issue.

B. Factual Sufficiency

 In his second issue, appellant contends that the evidence was factually
insufficient to support his conviction for murder. When conducting a factual-sufficiency review, we view all of the evidence in a neutral light.  See Cain, 958
S.W.2d at 408. We will set the verdict aside only if (1) the evidence is so weak that
the verdict is clearly wrong and manifestly unjust, or (2) the verdict is against the
great weight and preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).  Under the first prong of Johnson, we cannot say that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum
of evidence admitted, we would have voted to acquit had we been on the jury. 
Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second
prong of Johnson, we cannot declare that a conflict in the evidence justifies a new
trial simply because we disagree with the jury's resolution of that conflict.  Id.  Before
finding that the evidence is factually insufficient to support a verdict under the second
prong of Johnson, we must be able to say, with some objective basis in the record,
that the great weight and preponderance of the evidence contradicts the jury's
verdict.  Id.  

 The fact-finder alone determines what weight to place on conflicting testimony
because that determination depends on the fact-finder's evaluation of witnesses'
credibility and demeanor. Cain, 958 S.W.2d at 408-09.  As the sole determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented.  See id. at 407 n.5.

 In conducting a factual-sufficiency review, we must also discuss the evidence
that the appellant contends most undermines the jury's verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). Appellant argues that the evidence against
him was factually insufficient to support his conviction because there was no
eyewitness to the shooting itself. However, circumstantial evidence alone is
sufficient to establish guilt. Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App.
2004). It is not necessary that every fact point directly and independently to the
defendant's guilt; it is enough if the conclusion is warranted by the combined and
cumulative force of all the incriminating circumstances. Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993).

 Here, the jury's conclusion that appellant was guilty of the complainant's
murder is supported by the "combined and cumulative force" of all of the evidence. 
See id. Leifester testified that appellant was the one who entered her home and went
to the bedroom where the complainant was waiting alone, that she heard a gunshot,
and that immediately after appellant left the room she found the complainant lying
face-down on the bedroom floor. Her account was corroborated by McAdams's
testimony that she heard a man enter the home, heard a gunshot, and then found the
complainant lying in the floor of the bedroom suffering from a gunshot wound. 
Appellant's conviction was also supported by Miller's testimony that King told her
he had sent appellant to kill the complainant and by Makeba Thomas's testimony that
appellant told him while they shared a jail cell that he had shot the complainant.

 Appellant's own testimony contradicted the testimony of these witnesses. He
testified that he never told Makeba Thomas that he committed the shooting--he only
told Thomas the details that he had learned from the police offense report. He also
testified that he had never seen Leifester or McAdams before the trial began and that
he did not know the complainant at all. Appellant argues that the testimony of the
other witnesses lacked credibility. However, the jury alone determines what weight
to place on contradictory testimonial evidence because that determination depends
on its evaluation of credibility and demeanor. See Cain, 958 S.W.2d at 408-09.

 In light of all of the evidence, there is no objective basis in the record from
which we may conclude that the evidence supporting the jury's finding that appellant
knowingly or intentionally caused the death of the complainant was so weak as to
render the jury's verdict clearly wrong and manifestly unjust or that it was against the
great weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 11. We
therefore hold that the evidence is factually sufficient to support appellant's
conviction, and we overrule appellant's second issue.

Motion for Mistrial


 In his fifth issue, appellant contends that the trial court erred by denying his
motion for mistrial based on the following exchange in which Officer P. Guerrero was
describing how he developed suspects and assembled photos to create the various
photo spreads that were shown to Leifester and McAdams:

[the State]: And what did you do with those photographs?


[Guerrero]: Well, the first photograph was from the Harris
County Sheriff's Office for Mr. Chaney.


[appellant]: Your Honor, may we approach, Your Honor?


[trial court]: You may.


(At the bench, on the record)


. . . .


[appellant]: I move for a mistrial, Your Honor.


[trial court]: I'm going to deny that. But there is no reason--if
you want to say that a photograph was placed in, you
can put in a photograph; but from where that came,
you will not get into that.


. . . . 


[trial court]: I'll ask--if you want me to instruct the jury to
disregard that last statement, I'll instruct them to
disregard it. Is that what you are asking?


[appellant]: Yes.


(Open court)


[trial court]: Ladies and gentlemen, you're instructed to disregard
the last question and response from this witness. 
Not to consider it for any purpose.


Appellant argues that the exchange that preceded the bench conference implied that
he had a prior criminal record and that the mistrial should have been granted.

 We review the denial of a motion for mistrial under an abuse of discretion
standard. See Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). We
must uphold the trial court's ruling as long as the ruling was within the zone of
reasonable disagreement. Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim App.
2004). A mistrial is appropriate "to halt trial proceedings when error is so prejudicial
that expenditure of further time and expense would be wasteful and futile." Wood v.
State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). This occurs only in "a narrow
class of highly prejudicial and incurable errors." Id.

 When, as here, the trial court sustains an objection and instructs the jury to
disregard, but denies a defendant's motion for a mistrial, the dispositive issue is
whether the trial court abused its discretion by denying a mistrial. Hawkins, 135
S.W.3d at 77. In determining whether the trial court abused its discretion in denying
the mistrial, we balance three factors: (1) the severity of the misconduct, or
prejudicial effect, (2) the curative measures taken by the trial court, and (3) the
certainty of conviction absent the misconduct. Id. at 75. Only in extreme
circumstances, when the prejudice is incurable or the comment is so prejudicial that
"expenditure of further time and expense would be wasteful and futile," will a
mistrial be required. Id. at 77.

 Here, the improper statement was not severely prejudicial, but rather, a non-responsive answer to the State's question, "And what did you do with those
photographs?" Further, the response did no more than imply that appellant had prior
dealings with the Sheriff's Office and fell short of revealing any specific details about
appellant's prior criminal history. The trial court quickly addressed the impropriety
of the witness's response and instructed the jury to disregard the question and the
response from the witness. We presume that the jurors followed the trial court's
instruction to disregard the witness's response. See Wesbrook v. State, 29 S.W.3d
103, 1156 (Tex. Crim. App. 2000); see also State v. Boyd, 202 S.W.3d 393, 402 (Tex.
App.--Dallas 2006, pet. ref'd) ("The general rule is that error in admitting improper
evidence may be corrected by withdrawal of the evidence and an instruction to
disregard."). Finally, we determine that certainty of conviction without the
misconduct was still quite high, given the evidence presented against appellant that
we have already discussed elsewhere in this opinion.

 Therefore, we cannot conclude that the trial court abused its discretion in
denying appellant's motion for mistrial. Accordingly, we overrule appellant's fifth
issue.

Ineffectiveness of Counsel

 In his sixth issue, appellant contends that his trial counsel was ineffective for
her failure to object to improper hearsay.

A. Standard of Review

 The "benchmark for judging any claim of ineffectiveness must be whether
counsel's conduct so undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a just result." Strickland v.
Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). Strickland establishes
a two-part test for claims of ineffectiveness of counsel. First, the performance must
be deficient to the level that counsel made errors so serious that counsel was not
functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment;
second, the defendant must show that the deficient performance prejudiced the
defense. Id. 466 U.S. at 687, 104 S. Ct. at 2064. Counsel's errors must have been so
serious as to deprive the defendant of a fair trial, and there is a reasonable probability
that, but for the counsel's unprofessional errors, the result would have been different. 
Id., 466 U.S. at 694, 104 S. Ct. at 2068. 

 There is a strong presumption that counsel's conduct fell within the wide range
of reasonable professional assistance, and the defendant must overcome the
presumption that the challenged action might be considered sound trial strategy. Id.,
466 U.S. at 689, 104 S. Ct. at 2065. To overcome the presumption of reasonable
professional assistance, "any allegation of ineffectiveness must be firmly founded in
the record, and the record must affirmatively demonstrate the alleged
ineffectiveness." Thompson v. State, 9 S.W.3d at 808, 814 (Tex. Crim. App. 1999). 
"[W]hen no reasonable trial strategy could justify trial counsel's conduct," however,
counsel's performance may fall below an objective standard of reasonableness as a
matter of law, "regardless of whether the record adequately reflects trial counsel's
subjective reasons for acting as he did." Andrews v. State, 159 S.W.3d 98, 102 (Tex.
Crim. App. 2005). 

B. Discussion

 Appellant contends, in part, that trial counsel was ineffective because
"Detective Avila testified without objection about a clue sheet he received which
caused him to make appellant a suspect." Detective Avila was testifying about a
document the homicide detectives use to help them in their investigation when the
following exchange occurred:

[Avila]: [I]f the officer [taking a phone call from someone
with information about the case] doesn't know right
there at that moment who the investigator [is] . . .
he'll write it all down on the clue sheet and then
give it to the on-duty lenient [sic].


[the State]: Okay.


[trial counsel]: Excuse me, may we approach, Your Honor?


[trial court]: You may.


(At the bench, on the record)


. . . .


[trial counsel]: I cannot say a hundred percent sure but it looks like
this is leading to some hearsay that someone said.


[trial court]: Well, with regard to what's on that sheet or any talk
about that, I'm not going to allow that.


[the State]: I understand that. Let me ask this: Where I expect to
go to next is establish [with] this detective that, after
reviewing that clue sheet, he began looking at the
names Rick and Jermaine. Now, can I ask him why
he was looking at Rick and Jermaine?


[trial court]: You can ask him: Did he look at a Rick and
Jermaine-- 


[the State]: Okay. We'll just do that.


[trial court]: But as to why, no.


. . . .


(Open court)


[the State]: Okay. You get this clue sheet, what do you do with
it?


[Avila]: Well, I--


[the State]: Just so we're clear, don't go into the contents of it. 
Just what do you do with it?


[Avila]: I follow up with that information and construct a
photo spread.


. . . .


[the State]: [D]id you develop or limit down who it was that you
were looking for as being involved in this murder?


[Avila]: Yes, sir.


[the State]: Okay. Who were you--who, specifically, did you
have in mind as a suspect involved in the homicide.


[Avila]: Brandy Jermaine Scott.


. . . .


[the State]: What was it about Brandy Jermaine Scott as
opposed to these other three individuals that made
you suspect him?


[Avila]: The name Jermaine.


Detective Avila then completed his testimony by explaining how he constructed the
photo spread.

 Although appellant complains that appellant's trial counsel did not object to
Detective Avila's testimony, the record clearly reflects that counsel made the trial
court aware of the potential for hearsay testimony being introduced as Detective
Avila testified about his investigation and his use of the clue sheet. The trial court
instructed the State accordingly, and none of the testimony that was given at trial
constituted hearsay. See Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App.
1995) (holding that statements offered to explain how defendant became suspect and
not for truth of matter asserted are not hearsay). It is well-established that failure to
object to admissible evidence does not constitute ineffective assistance of counsel. 
Cooper v. State, 707 S.W.3d 686, 689 (Tex. App.--Houston [1st Dist.] 1980, pet.
ref'd). There is no basis on which to conclude that appellant's trial counsel's
performance was deficient in this regard.

 Appellant also argues that his trial counsel was ineffective because she "failed
to object when Officer [P.] Guerrero testified to hearsay that Thelma Leifester
identified appellant going into the room shortly before the shooting when she did not
testify to that." Officer Guerrero testified about Leifester's identification of appellant
as follows:

[the State]: When you showed [the photo spread] to her, did she
recognize anyone?


[Guerrero]: Yes.


[the State]: Who did she recognize?


[Guerrero]: [Appellant.]


. . . .


[the State]: Who did she--excuse me, who did she identify him
as?


[Guerrero]: He's the man that went into the room where [the
complainant] was at and then--shortly before the
shooting.


[the State]: All right. When you showed her these photographs,
how long did it take before she recognized
[appellant's] photo as the person she saw that night
of the shooting?


[Guerrero]: It was very quick.


 Again, appellant argues that trial counsel was ineffective for failing to object
to this testimony. However, Rule of Evidence 801(e)(1)(C) provides, "A statement
is not hearsay if . . . the declarant testifies at the trial or hearing and is subject to
cross-examination concerning the statement, and the statement is . . . one of
identification of a person made after perceiving the person . . . ." Tex. R. Evid.
801(e)(1)(C). Leifester testified during the trial that she was shown the photo spread
containing appellant's photograph and that she identified him as the shooter. 
Leifester also identified appellant in court as the shooter, and she was cross-examined
by appellant's trial counsel. Therefore, Officer Guerrero's statements relating to
Leifester's identification of appellant were not hearsay. Id.; see Rodriguez v. State,
975 S.W.2d 667, 682-83 (Tex. App.--Texarkana 1998, pet. ref'd) (holding that
police officer's testimony concerning out-of-court identification by victim was not
hearsay). Because the testimony was admissible, there is no basis on which to
conclude that appellant's trial counsel's performance was deficient in this regard. See
Green v. State, 191 S.W.3d 888, 895 (Tex. App.--Houston [14th Dist.] 2006, pet.
ref'd).

 Finally, appellant argues that his trial counsel was ineffective because she
failed to object when Antoinette Miller testified about King's statements that he sent
appellant to kill the complainant. Here, too, the record does not support the
contention that trial counsel was ineffective. In fact, appellant's trial counsel
objected that Miller's testimony was inadmissible, and the trial court held a hearing
outside the presence of the jury to determine whether Miller's testimony should be
admitted. After hearing Miller's testimony, the trial court allowed her to testify
before the jury. Appellant's trial counsel was not required to object again when
Miller's testimony was presented to the jury. See Ethington v. State, 819 S.W.2d 854,
858 (Tex. Crim. App. 1991) (holding that when trial court hears and overrules
objections to evidence outside hearing of jury, those objections need not be made
again in front of jury when evidence is actually presented). Therefore, we cannot find
appellant's trial counsel's performance deficient in this regard. Accordingly,
appellant has failed to establish the threshold first prong of the Strickland test. See
Strickland, 466 U.S. at 687, 104 S. Ct. At 2064.

 We overrule appellant's sixth issue.


Conclusion

 We affirm the judgment of the trial court.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Penal Code Ann. § 19.02 (Vernon 2003).
2. Appellant also complains of Thomas's testimony that King told him that he had killed
someone in the past. This argument was not preserved for appeal because the trial
court never ruled on the admissibility of Garrett Thomas's testimony regarding any
prior crimes King told him he committed, and trial counsel did not object when this
testimony was presented in court. See Wilson v. State, 71 S.W.3d 346, 349 (Tex.
Crim. App. 2002) (holding that complaining party must make timely, specific
objection and obtain ruling on objection to preserve error for appellate review);
Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (holding that party
must continue to object each time inadmissible evidence is offered). Even if
appellant's trial counsel's general objection to Thomas's hearsay testimony preserved
this complaint and it could be shown to have been admitted in error, there was no
harm. See Crum v. State, 946 S.W.2d 349, 364 (Tex. App.--Houston [14th Dist.]
1997, pet. ref'd) ("We must determine from a review of the record whether the minds
of an average juror would have found the State's case significantly less persuasive
had the testimony at issue been excluded."). Thomas's brief testimony about King's
prior criminal acts could not have had any affect on the jury's conviction of appellant
given all of the evidence presented against appellant himself, including Leifester's
testimony that appellant entered her home and shot the complainant.
3. Appellant's argument that the statements were not admissible as statements of a
coconspirator because appellant was not part of a conspiracy at the time the
statements were made is unpersuasive because coconspirator statements are
admissible when the coconspirator is part of a conspiracy "in which the defendant also
participated or later joined." See Peoples v. State, 928 S.W.2d 112, 116 (Tex.
App.--Houston [1st Dist.] 1996, pet. ref'd) (emphasis added). Furthermore,
statements, like King's, that are made to induce another's involvement in the
conspiracy are statements made in furtherance of the conspiracy. See Crum, 946
S.W.3d at 363 (holding that statements made in furtherance of conspiracy include
those made "with intent to induce another to join the conspiracy"). However, the
State was also required to prove that the statements were made in the course of a
conspiracy. See Meador v. State, 812 S.W.2d 330, 333 (Tex. Crim. App. 1991)
("[T]he 'in furtherance' of the conspiracy requirement of Rule 801(e)(2)(E) is a
separate requirement that must be met in addition to the requirement that the
statement be made "during the conspiracy.'").
4. See Tex. Penal Code Ann. § 15.03(a) (Vernon 2003) ("A person commits an offense
if, with intent that a capital felony or felony of the first degree be committed, he
requests, commands, or attempts to induce another to engage in specific conduct that,
under the circumstances surrounding his conduct as the actor believes them to be,
would constitute the felony or make the other a party to its commission.").